NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MOHAMED KHALIL, <br><br> Plaintiff, <br><br> v. <br><br> CITY OF PATERSON, *et al.*, <br><br> Defendants. | Civil Action No.: 18-3241 (JLL) <br><br> **OPINION** |

**LINARES**, Chief District Judge.

This matter comes before the Court by way of a motion to dismiss filed by Defendants City of Paterson, Paterson Police Department, and William Fraher (collectively, the "City") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (ECF No. 8). Plaintiff has submitted an opposition to the City's motion, (ECF No. 13), to which the City has replied, (ECF No. 15). The Court decides this matter without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure. For the reasons set forth below, the Court grants the City's motion to dismiss.

I. **BACKGROUND**[1]

Plaintiff Mohamed Khalil, a United States citizen of Egyptian descent, is an employee of the City of Paterson. (Compl. ¶¶ 2, 34). On Sunday, March 6, 2016, at 1:30 a.m., Plaintiff appeared at the Paterson police station to file a complaint. (Compl. ¶ 14). He was told by an

---

[1] This background is derived from the allegations in Plaintiff's Complaint, (ECF No. 1 ("Compl.")), which the Court must accept as true at this stage of the proceedings. *See Alston v. Countrywide Fin. Corp.*, 585 F.3d 753, 758 (3d Cir. 2009).

officer on desk duty to return at 4:30 a.m. or to leave his phone number. (Compl. ¶ 15). Having left, Plaintiff called the police station at approximately 4:30 a.m. and was told to return in person. (Compl. ¶¶ 16–17). When Plaintiff returned to the police station, a police officer who Plaintiff believes to be Defendant Elizabeth Straub greeted him "very aggressively," telling Plaintiff he had an "Arab Muslim name" and saying to him, "You Arab Muslim, you treat women badly and disrespect women." (Compl. ¶¶ 18–19). When Plaintiff told Officer Straub the details of his complaint, Officer Straub "accused [Plaintiff] of lying" in the complaint and "continued to harass, belittle and disrespect" him. (Compl. ¶¶ 21–22, 29).

Officer Straub told Plaintiff that it would take three hours to process his report, so Plaintiff sat down and opened his phone to check his messages. (Compl. ¶¶ 25–26). A few minutes later, Plaintiff "raised his head and saw a male [o]fficer ([Defendant] 'Officer No. 1') playing with the ear and neck of [Officer Straub] in an intimate way." (Compl. ¶ 27). Plaintiff "tried to look away immediately," but Officer No. 1 "made eye contact with him," and told Officer Straub that Plaintiff had seen them. (Compl. ¶¶ 27–28). After three hours of waiting, Officer Straub informed Plaintiff that she would not process his report unless he "removed a certain part of it." (Compl. ¶ 30). When Plaintiff resisted, Officer Straub told Plaintiff that he had to leave, calling him an expletive. (Compl. ¶ 30). Plaintiff then asked to speak with Officer Straub's supervisor. (Compl. ¶ 32). An officer who Plaintiff believes to be Defendant Sergeant Joseph Delgado then emerged from the back of the police station and shouted at Plaintiff that he had to leave, also calling him an expletive and threatening him physically. (Compl. ¶ 33). Plaintiff announced that he was leaving, "raised his arms in the air," and began exiting the station, while Sergeant Delgado "us[ed] his body to push" Plaintiff outside. (Compl. ¶¶ 34–35). Plaintiff told Sergeant Delgado that Plaintiff was "a City employee, [and] worked with the Mayor and Police Director," to which Sergeant Delgado

2

replied by launching additional expletives at Plaintiff relating to the Mayor and Police Director and Sergeant Delgado's overtime pay. (Compl. ¶ 35).

Outside the police station and heading toward his car, Plaintiff heard Officer No. 1 shout, "No, don't let him go, he was recording us!"—referring to Officer No. 1's belief that Plaintiff had recorded a video of Officer No. 1 and Officer Straub using Plaintiff's phone. (Compl. ¶¶ 28, 36). Officer No. 1 ran after Plaintiff and snatched his phone. (Compl. ¶ 37). Officer Straub emerged from the station and told Plaintiff that he was under arrest for trespassing, adding, "You [expletive], I'll make you a criminal. I'll give you charges so even if the judge wants to downgrade, you will still be a criminal. You said you work with us in the City? I'll make you lose your job because you will be a criminal." (Compl. ¶ 40).

Plaintiff alleges that Sergeant Delgado "and six other [o]fficers came outside and were hitting and punching . . . Plaintiff in his chest, kidneys, and legs." (Compl. ¶ 41). Sergeant Delgado "held . . . Plaintiff's head from the back and banged it on the concrete, walls, glass door, elevator, and pushed . . . Plaintiff against every wall and metal bar that he could while dragging" Plaintiff from outside into the police station and up the stairs. (Compl. ¶ 42). Sergeant Delgado told Plaintiff, "if the Israeli police arrested you, you would not open your mouth; they would shoot and kill you. You are lucky here." (Compl. ¶¶ 44). Plaintiff "begged to be released," but Officer Straub told him she would "make sure you lose your job and your citizenship in the immigration," and "make sure you spend all weekend here," asking other officers to compile charges against Plaintiff to ensure "he would still have a criminal record even if the judge lowered or dismissed some of them." (Compl. ¶¶ 46–47). Officer Straub, Sergeant Delgado, and other officers completed arrest paperwork for Plaintiff and charged him with disorderly conduct, trespassing,

obstructing administration of law, and resisting arrest.[2] (Compl. ¶¶ 49, 68). The officers took Plaintiff's clothing, "leaving him to sleep on [a] bare metal bed" in a cell. (Compl. ¶¶ 50–53).

Plaintiff was not released until 7:45 p.m. on March 6, 2016. (Compl. ¶ 57). Plaintiff visited St. Joseph's Hospital that evening and then returned the following morning, when he learned that he suffered from a fever exceeding 100 degrees, a contusion on his chest, a bacterial infection, and blood in his urine as a result of blows to his kidneys. (Compl. ¶¶ 59, 61). Plaintiff missed two weeks of work and continued to suffer from symptoms following the incident, including "coughing and shortness of breath with pinching pains in [the] chest and rib area," the inability "to lift his arm above his head without pain," a recurring bacterial infection, and ongoing "psychological effects." (Compl. ¶¶ 63, 65–67). Plaintiff filed a complaint with the Paterson Police Department's Internal Affairs Division, which commenced an investigation shortly after the incident. (Compl. ¶¶ 60, 69–74). Plaintiff also alleges that he reported the incident personally to the Mayor and Police Director of Paterson. (Compl. ¶ 58, 60).

Plaintiff filed this action against the City of Paterson, the Paterson Police Department (the "PPD"), and former PPD Chief of Police William Fraher in his official and individual capacities, as well as Officer Straub in her individual capacity, Sergeant Delgado in his individual capacity, Officer No. 1 in his individual capacity, and Unnamed Doe Officers in their individual capacities (collectively, "Individual Defendants"), alleging sixteen counts, as follows: violations of the Fourth Amendment of the United States Constitution under 42 U.S.C. § 1983 (Counts I–V), conspiracy under 42 U.S.C. § 1985 (Count VI), violations of the New Jersey Constitution under the New Jersey Civil Rights Act (the "NJCRA") (Counts VII and VIII), assault and battery (Count IX), common law malicious prosecution (Count X), gross negligence (Count XI), negligence

---

[2] All charges against Plaintiff were dismissed on June 1, 2016. (Compl. ¶ 75).

(Count XII), intentional infliction of emotional distress (Count XIII), respondeat superior liability (Count XIV), common law false imprisonment (Count XV), and failure to intervene (Count XVI). (*See* Compl. ¶¶ 77–181).

The City moves to dismiss portions of the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim, arguing generally that the City is not vicariously liable for the conduct of the Individual Defendants. (ECF No. 8-1 ("Mov. Br.") at 13–24). The motion is filed on behalf of the City only, and not on behalf of the Individual Defendants. (Mov. Br. at 31).

## II. LEGAL STANDARD

To withstand a motion to dismiss for failure to state a claim, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

In order to determine the sufficiency of a complaint under *Twombly* and *Iqbal* in the Third Circuit, the Court must take three steps. "First, it must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, '[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly

5

give rise to an entitlement for relief.'" *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 675, 679) (citations omitted).

### III. ANALYSIS

#### A. Defendant PPD

As an initial matter, the City argues that the PPD should be dismissed from this action because Plaintiff's claims against it are duplicative of his claims against the City of Paterson itself. (Mov. Br. at 15). The Court agrees. In § 1983 actions, "[p]olice departments cannot be sued in conjunction with municipalities, because the police department is merely an administrative arm of the local municipality, and is not a separate judicial entity." *Trafton v. City of Woodbury*, 799 F. Supp. 2d 417, 430 (D.N.J. 2011) (quoting *Padilla v. Twp. of Cherry Hill*, 110 F. App'x 272, 278 (3d Cir. 2004)). Because the PPD is "merely an administrative arm" of the City, which Plaintiff has also named in the Complaint, the PPD is not a proper defendant. *See Adams v. City of Camden*, 461 F. Supp. 2d 263, 266 (D.N.J. 2006) (granting summary judgment as to municipal police department as an improper defendant because New Jersey police departments are "an executive and enforcement function of municipal government") (quoting N.J.S.A. 40A:14–118). Therefore, the Court dismisses Plaintiff's claims against the PPD.

#### B. Chief Fraher in His Official Capacity

City Defendants also argue that Plaintiff's claims against Chief Fraher in his official capacity should be dismissed as duplicative of his claims against the City. (Mov. Br. at 15–16). The Court agrees. "[A] lawsuit against public officers in their official capacities is functionally a suit against the public entity that employs them." *Cuvo v. De Biasi*, 169 F. App'x 688, 693 (3d

Cir. 2006). Because of the "inherent redundancy" of suing both the City as well as Chief Fraher in his official capacity, Plaintiff's claims against Chief Fraher in his official capacity are dismissed. *Rodriguez v. City of Camden*, No. 09-1909, 2010 WL 186248, at *4 (D.N.J. Jan. 13, 2010) (dismissing claims against officer in his official capacity brought alongside claims against municipality).

## C. Section 1983

### 1. The City—*Monell* Liability (Counts II–V)

"A municipality or other local government may be liable under [§ 1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 692 (1978)). However, "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell*, 436 U.S. at 694. In other words, under *Monell*, "plaintiffs may not rely on a theory of respondeat superior to impose liability on municipalities." *Brown v. City of Pittsburgh*, 586 F.3d 263, 292 (3d Cir. 2009). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell*, 436 U.S. at 694. Therefore, "[a] plaintiff can attribute a constitutional tort to the city itself by showing the injury was caused by city policy, by city custom, or by policymaking officials' deliberate indifference to constituents' constitutional rights." *Wright v. City of Phila.*, 685 F. App'x 142, 146 (3d Cir. 2017).

Plaintiff premises the City's *Monell* liability on allegations that the City "failed to adopt and fund necessary policies and training programs" that would ensure the protection of the

constitutional rights of citizens in police custody. (Compl. ¶ 99). "In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick*, 563 U.S. at 61. A municipality may be held liable for its failure to train employees, however, only where that failure amounts to "deliberate indifference to the [constitutional] rights of persons with whom the police come in contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). Deliberate indifference is a stringent standard of fault "requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick*, 563 U.S. at 61 (quoting *Board of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 410 (1997)). A plaintiff may show deliberate indifference in a failure-to-train case in one of two ways: (1) through a pattern of similar constitutional violations providing a municipal actor with notice of the need for training; and (2) demonstrating "single-incident" liability for circumstances in which training is obviously necessary to avoid constitutional violations. *Id.* at 62–64.

In general, a plaintiff must establish deliberate indifference in accordance with the first means in order to state a failure to train claim: "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Id.* at 62 (quoting *Bryan Cty.*, 520 U.S. at 409). A plaintiff pursuing this approach must show that the municipality had notice of the pattern: "when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policy makers choose to retain that program." *Id.* at 61. Causation between the municipality's knowledge of a training deficiency and the plaintiff's injury must also be shown: "'for liability to attach in this circumstance the identified deficiency . . . must be closely related to

the ultimate injury,' meaning that the plaintiff must 'prove that the deficiency in training actually caused [the violation].'" *Doe v. Luzerne Cty.*, 660 F.3d 169, 180 (3d Cir. 2011) (quoting *City of Canton*, 489 U.S. at 391).

Under New Jersey law, "the Chief of Police [is] the relevant policymaker" for purposes of establishing deliberate indifference on the part of a municipality. *Hernandez v. Borough of Palisades Park Police Dep't*, 58 F. App'x 909, 913 (3d Cir. 2003) (citing N.J.S.A. 40A:14–118). Accordingly, the relevant policymaker whom Plaintiff must show had notice that the City's training was constitutionally defective was Chief Fraher. The facts in the Complaint must therefore plausibly show that (1) Chief Fraher had notice of and (2) "consciously disregarded an obvious risk that the officer[s] would subsequently inflict a particular constitutional injury," and that (3) Fraher's deliberate indifference caused the individual officers to deprive Plaintiff of his Fourth Amendment rights. *Bryan Cty.*, 520 U.S. at 411.

The Complaint's failure-to-train allegations contain certain conclusory statements which the Court distinguishes from factual allegations. *See Iqbal*, 556 U.S. at 679 ("a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth"). Plaintiff alleges that the City "failed to adopt policies or training that enforced the laws and Constitutional rights of members of the public," "failed to adopt and fund necessary policies and training programs that would recognize and discipline its agents, servants and/or employees for the use of excessive force," and that such "policies and procedures were enacted or continued in a manner that was reckless or callously indifferent to the Plaintiff's constitutional and statutory protected constitutional rights." (Compl. ¶¶ 97, 101, 109). Likewise, Plaintiff alleges that his injuries were "a direct and proximate result of the Defendants' policy, custom, and practice" of failing to train its police officers. (Compl. ¶

9

114). A pure recitation of the elements of *Monell* liability does not provide the necessary factual support to state a claim against the City. *See, e.g., Schweizer v. Middle Twp. Mayor and Governing Body*, No. 17-960, 2018 WL 2002792, at *4 (D.N.J. Apr. 30, 2018) (dismissing § 1983 claims where the complaint "merely provide[d] conclusory allegations as to the municipal defendants' policy, custom, and training failures, without any factual support"); *Estate of Bard v. City of Vineland*, No. 17-1452, 2017 WL 4697064, at *3 (D.N.J. Oct. 19, 2017) (dismissing § 1983 claims where the plaintiff's allegations were "simply conclusory restatements of the legal elements of unconstitutional policy, custom, and failure to train claims under *Monell*").

The single factual allegation grounding Plaintiff's claims that the City's failure to train its officers contributed to his alleged injuries is that "excessive-force complaints filed by the public against Paterson Police Officers increased from 33 in 2015 to 44 in 2016." (Compl. ¶ 113). A police chief may be found to have "constructive knowledge of constitutional violations where they are repeatedly reported in writing to the Police Department." *Hernandez*, 58 F. App'x at 913. However, allegations concerning prior unconstitutional acts of police officers, "isolated and without further context," do not give rise to a finding that "a municipal policy or custom authorizes or condones" those acts. *Merman v. City of Camden*, 824 F. Supp. 2d 581, 591 (D.N.J. 2010). A plaintiff relying on a number of past offenses must allege facts showing "how the misconduct in those situations was similar to the present one." *Id.* (quoting *Brown v. New Hanover Twp. Police Dep't*, No. 07-2776, 2008 WL 4306760, at *15 (E.D. Pa. Sept. 22, 2008)); *see also Haberle v. Troxell*, 885 F.3d 170, 182 (3d Cir. 2018) (affirming dismissal of § 1983 claim despite allegations that the municipality had a history of civil rights violations because, even if the plaintiff "could ultimately prove a generalized history of civil rights violations, that would not necessarily demonstrate 'a pattern of past occurrences of injuries *like the plaintiff['s]*'" (quoting *Beers-Capitol*

*v. Whetzel*, 256 F.3d 120, 136 (3d Cir. 2001)).

The required specificity may be achieved "by focusing on the [offending] officer's own history of prior complaints." *Shuman v. Raritan Twp.*, No. 14-3658, 2016 WL 7013465, at *24 (D.N.J. Nov. 30, 2016); *see also Zampetis v. City of Atlantic City*, No. 15-1231, 2016 WL 5417195, at *5 (D.N.J. Sept. 28, 2016) ("[a]llegations that an offending officer was the subject of similar prior complaints, of which the policymaker was aware, can support an inference that the policymaker tacitly had notice of and tacitly condoned the use of excessive force"). However, Plaintiff does not allege the existence of any excessive force complaints relating specifically to Officer Straub or Sergeant Delgado. The City cannot be said to be on notice of a risk that Officer Straub and Sergeant Delgado would violate Plaintiff's rights purely based on an alleged increase in excessive force complaints against PPD officers in general. *See Zampetis*, 2016 WL 5417195, at *5 (dismissing § 1983 claims against municipality where the plaintiff did "not allege[] facts describing Internal Affairs complaints against the individual police officers named in this case" because "the fact that other police officers are alleged to have used excessive force does not put the Police Chief on notice that the Defendant officers in this case posed a risk of using excessive force"); *Habayeb v. Butler*, No. 15-5107, 2016 WL 1242763, at *6 n.2 (D.N.J. Mar. 29, 2016) (dismissing failure-to-train claim where plaintiff cited a prior lawsuit against municipality, noting that the Court could "not assume that the settlement" in the prior case indicated "a lack of training, deliberate indifference, or custom or policy"). Accordingly, Plaintiff's conclusory statements that the City failed to train its officers to avoid constitutional rights violations, supported only by a general allegation that the City experienced an increase in administrative excessive force complaints, cannot survive the City's motion to dismiss.

Plaintiff also asks the Court to infer that the City "sanctioned the conduct of its police

officers against Plaintiff" because the City "had an obligation to investigate the incident as a possible crime" and yet "has taken no action to discipline the police officers that . . . used excessive force against him." (ECF No. 13 ("Opp. Br.") at 23; Compl. ¶ 112). However, an allegation that a municipality inadequately investigated the incident giving rise to a § 1983 claim is insufficient to establish the existence of a municipal policy or custom. *See Blakey v. City of Pittsburgh Police Dep't*, 449 F. App'x 135, 138 (3d Cir. 2011) (affirming dismissal of *Monell* claim where plaintiff claimed that the city's investigation into the incident was inadequate, finding that allegation "insufficient to sustain a cause of action against the City"). This is in part because any failure in an "after-the-fact internal affairs investigation" of the officers' conduct cannot support an inference that the City's actions *caused* Plaintiff's injuries. *Payano v. City of Camden*, No. 13-2528, 2016 WL 386040, at *8 (D.N.J. Feb. 1, 2016) (granting summary judgment for city where there was no evidence that "the City knew that [the officer in question] was prone to the use of excessive force and adopted a policy to ignore that fact *prior to the incident* with Plaintiff," noting that the plaintiff's "criticism of [the investigative] process . . . cannot supply the missing causation") (emphasis added).

Aside from the existence of excessive force complaints, the Complaint does not contain any factual allegations that would implicate Chief Fraher specifically. The Complaint alleges only that Chief Fraher was "entrusted to protect the Constitutional rights of those he encounters and . . . was acting within the scope of his duties and authority, under color or title of state law supervised or controlled . . . or acted in concert with one or more of the other individual Defendants in the performance or conduct of their actions." (Compl. ¶ 5). Plaintiff's allegations concerning the City's policy, custom, and failure to train its officers do not contain facts giving rise to an inference that Chief Fraher was involved in or acquiesced to a pattern of excessive force violations.

Accordingly, the allegations fail to state a claim against the City. *See McTernan v. City of York*, 564 F.3d 636, 658–59 (3d Cir. 2009) (affirming dismissal of § 1983 claims against municipality where complaint lacked allegations of knowledge or direction on the part of specific individual municipal decisionmakers); *Moriarty v. DiBuonaventura*, No. 14-2492, 2014 WL 3778728, at *9 (D.N.J. July 31, 2014) (dismissing § 1983 claims against municipality where the complaint "allege[d] the existence of inadequate policies with regard to training . . . but [did] not plead that a municipal decisionmaker, such as the mayor or chief of police, effectuated such a policy or knew of and acquiesced to it as a 'well-settled custom'").

With respect to Plaintiff's claims for wrongful arrest, false imprisonment, and malicious prosecution, Plaintiff does not allege that the City had a policy or custom regarding such practices or that the City was on notice of a pattern of similar constitutional violations. Without such allegations, Plaintiff must satisfy the requirements for "single-incident" failure-to-train liability. There is a narrow range of circumstances in which the need to train officers is "'so obvious,' that failure to do so could properly be characterized as 'deliberate indifference' to constitutional rights," even without a pattern of previous violations. *Thomas v. Cumberland Cty.*, 749 F.3d 217, 223 (3d Cir. 2014) (quoting *City of Canton*, 489 U.S. at 390 n.10). The Supreme Court's paragon hypothetical of single-incident liability involves a municipality that arms new police officers but fails to train them as to the constitutional limitations on the use of deadly force; the need for deadly-force training is "so obvious" that the municipality's failure to provide it would be deliberately indifferent. *City of Canton*, 489 U.S. at 390. To show deliberate indifference for purposes of such single-incident liability, a plaintiff would have to show that, "in light of the duties assigned to specific officers or employees[,] the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the

city can reasonably be said to have been deliberately indifferent to the need. In that event, the failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury." *Id.*

The Court finds that the Complaint's allegations of the City's failure to train its officers do not "fall within the narrow range of *Canton*'s hypothesized single-incident liability." *Connick*, 563 U.S. at 64. Assuming the need for training in probable cause and arrest procedures were as obvious as in the Supreme Court's *City of Canton* hypothetical, "there are no facts in Plaintiff['s] Complaint that allege anything whatsoever about the nature and extent of training on the part of [the City] regarding" probable cause. *Gaymon v. Esposito*, No. 11-4170, 2013 WL 4446973, at *15 (D.N.J. Aug. 16, 2013) (dismissing *Monell* claim based on single-incident theory). Although Plaintiff alleges that "Police Supervisors should have been notified or been made aware of an arrest occurring in a public lobby of the Police Station," the Complaint does not contain any allegations concerning a particular training inadequacy that, if addressed, would have prevented Plaintiff's arrest and detention. (Compl. ¶ 110). Indeed, "[i]n virtually every instance where a person has had his or her constitutional rights violated by a city employee, a § 1983 plaintiff will be able to point to something the city 'could have done' to prevent the unfortunate incident." *City of Canton*, 489 U.S. at 392 (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985)). Without more, the Complaint fails to state a § 1983 claim under a single-incident theory. *See Moriarty*, 2014 WL 3778728, at *7 (dismissing failure-to-train claim based on single incident because "there [were] no facts in the Complaint to suggest that [the offending officer]'s actions were the result of a lack of training, as opposed to [his] individual actions").

The Court is mindful that the Complaint contains serious allegations concerning the conduct of on-duty police officers. However, even assuming those allegations state a claim for an

underlying Fourth Amendment violation, Plaintiff's allegations as to *the City's* role in that violation do not satisfy the high standard that is required for municipal liability under *Monell* and its progeny. *See Connick*, 563 U.S. at 61 ("A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train."); *Zampetis*, 2016 WL 5417195, at *6 (noting that "[i]t might seem harsh at the pleading stage to require Plaintiff to assert facts indicating that [a municipality] had notice prior to the incident . . . that the particular officers involved here posed a risk of using excessive force and arresting citizens without probable cause," but concluding that the Supreme Court's § 1983 precedent requires it); *Grandizio v. Smith*, No. 14-3868, 2015 WL 58403, at *6 (D.N.J. Jan. 5, 2015) ("Plaintiff may not simply include a *Monell* claim in his Complaint as a matter of course by making the conclusory allegation that the alleged constitutional deprivations were due to a policy or custom of the [municipality]. Rather, Plaintiff must allege some actual facts suggesting as much."). Plaintiff's § 1983 claims against the City are therefore dismissed, but those claims remain as against the Individual Defendants, who have not, as of this date, responded to the Complaint.

### 2. Defendant Fraher in his Individual Capacity

The City contends that Plaintiff's § 1983 claims against Chief Fraher in his individual capacity should likewise be dismissed because the Complaint fails to state a § 1983 claim against Chief Fraher.[3] (Mov. Br. at 15–18). Plaintiff claims that Chief Fraher is individually liable for the alleged constitutional violations because he "supervised or controlled one or more of the [Individual] Defendants . . . or acted in concert with one or more of the other [I]ndividual Defendants in the performance or conduct of their actions." (Compl. ¶ 5). "[A] supervisor may

---

[3] Plaintiff does not dispute this argument in his Opposition Brief. (*See* Opp. Br.).

be personally liable . . . if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." *Santiago v. Warminster Twp.*, 629 F.3d 121, 129 (3d Cir. 2010) (quoting *A.M. ex rel. J.M.K. v. Luzerne Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004)). In order to state a claim for supervisory liability under § 1983, a plaintiff must also allege "a causal connection between the supervisor's direction and that violation." *Id.* at 130.

As discussed, *supra*, the Complaint "lacks any specific factual averments demonstrating that Chief Fraher had knowledge of, let alone approved, any alleged misconduct." (Mov. Br. at 17). In a § 1983 action, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Beyond Plaintiff's conclusory statement that Chief Fraher "supervised or controlled . . . or acted in concert with" the Individual Defendants who arrested and allegedly attacked him, (Compl. ¶ 5), the Complaint does not include any factual allegations that Chief Fraher was present or participated in the incident in any way, directed the individual officers under his supervision to take action with respect to Plaintiff, or had any contemporaneous knowledge of the incident whatsoever. The Court therefore dismisses Plaintiff's § 1983 claims against Chief Fraher in his individual capacity. *See Tenon v. Dreibelbis*, 606 F. App'x 681, 688 (3d Cir. 2015) (affirming summary judgment for supervisory defendant, noting that the officer "must have personal involvement, including participation, or actual knowledge and acquiescence, to be liable"); *Rodriguez*, 2010 WL 186248, at *3 (dismissing claims against city's chief operating officer because "plaintiff has failed to allege with requisite specificity that [the officer] had any personal involvement in the alleged constitutional deprivations").

## D. Conspiracy (Count VI)

To state a § 1985(3) conspiracy claim, a plaintiff must show: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Farber v. City of Paterson*, 440 F.3d 131, 134 (3d Cir. 2006) (quoting *United Bhd. of Carpenters and Joiners of Am. v. Scott*, 463 U.S. 825, 828–29 (1983)). Allegations of conspiracy must provide "some factual basis to support the existence of the elements of a conspiracy: agreement and concerted action." *Capogrosso v. Supreme Court of N.J.*, 588 F.3d 180, 185 (3d Cir. 2009) (quoting *Crabtree v. Muchmore*, 904 F.2d 1475, 1481 (10th Cir. 1990)). A plaintiff must also allege both "that the conspiracy was motivated by discriminatory animus against an identifiable class and that the discrimination against the identifiable class was invidious." *Farber*, 440 F.3d at 135.

As an initial matter, it is not clear that Plaintiff brings this claim against the City, (*see* Compl. at 19), but the Court will address the claim as if he does. Plaintiff alleges that "Defendants . . . conspired between and among themselves . . . to violate [P]laintiff's constitutional and civil rights by engaging in . . . the acts outlined in [the Complaint], all of which constitute overt acts in furtherance of the conspiracy," and as a result of which Plaintiff has suffered damages. (Compl. ¶¶ 122–25). The City argues that Plaintiff's conspiracy claim should be dismissed because these allegations are merely "legal conclusions . . . void of supporting material facts." (Mov. Br. at 19).

The Court finds that Plaintiff fails to satisfy the first element of a conspiracy claim because he fails to allege that the City or Chief Fraher *conspired with* the individual officers who committed the acts alleged in the Complaint. "To constitute a conspiracy, there must be a 'meeting of the

17

minds.'" *Startzell v. City of Phila.*, 533 F.3d 183, 205 (3d Cir. 2008) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 (1970)); *see also Watson v. Sec'y Pa. Dep't of Corr.*, 436 F. App'x 131, 137 (3d Cir. 2011) (affirming dismissal of conspiracy claim, finding plaintiff's "allegations of conspiracy to be conclusory and wanting" where plaintiff "invoke[d] 'conspiracy,' but fail[ed] to plead an actual agreement between the parties"). Plaintiff does not allege the existence of any agreement between the City or Chief Fraher and the individual officers whom he encountered on the night of the incident to deprive him of his constitutional rights. Accordingly, Plaintiff's conspiracy claim against the City and Chief Fraher is dismissed.

### E. New Jersey Civil Rights Act (Counts VII and VIII)

A plaintiff may bring a civil action under the New Jersey Civil Rights Act ("NJCRA"), N.J.S.A. 10:6–2, when he is deprived of a legally secured right. Plaintiff alleges violations of his rights to life and liberty and to be secure in his person against unreasonable seizures pursuant to paragraphs 1 and 7 of Article I of the New Jersey Constitution. (Compl. ¶¶ 127, 133). The City argues that Plaintiff's NJCRA claims should be dismissed because they are duplicative of his federal § 1983 claims. (Mov. Br. at 31–32). It is true that "New Jersey courts interpret the NJCRA as analogous to § 1983." *Ingram v. Twp. of Deptford*, 911 F. Supp. 2d 289, 298 (D.N.J. 2012). Accordingly, to the extent Plaintiff's NJCRA claims against the City and Chief Fraher rest on theories of respondeat superior liability or a policy, custom, or failure-to-train theory, the NJCRA claims are dismissed for the same reasons that Plaintiff's § 1983 claims are dismissed. *See, e.g., Janowski v. City of N. Wildwood*, 259 F. Supp. 3d 113, 128 n.5 (D.N.J. 2017) (dismissing § 1983 and NJCRA claims, noting that "Plaintiff's municipal liability claim under the NJCRA is interpreted consistently with Section 1983"); *Geissler v. City of Atlantic City*, 198 F. Supp. 3d 389,

396 (D.N.J. 2016) (dismissing § 1983 and NJCRA claims, holding that, "[h]aving failed to identify any municipal policy or custom in her Complaint, Plaintiff fails to state a claim against the City . . . under § 1983 and the [NJCRA]"); *Harvey v. Cty. of Hudson*, No. 14-3670, 2015 WL 9687862, at *11 (D.N.J. Nov. 25, 2015) (dismissing NJCRA claims alleging "*Monell*-style liability" against municipality because "[t]he NJCRA is construed closely in parallel to Section 1983").

### F. State Law Respondeat Superior and Tort Claims (Counts IX–XV)

To the extent Plaintiff pleads the respondeat superior count as a standalone claim—and it appears on the face of the Complaint that he does—there is no such independent cause of action. A claim of respondeat superior "does not set forth an actual cause of action, but merely reasserts [P]laintiff's claim that [the City] is responsible for the actions of its . . . police officers." *Merman*, 824 F. Supp. 2d at 598 n.31 (quotation marks omitted) (dismissing respondeat superior claim in § 1983 action because "to the extent plaintiff alleges *respondeat superior* as a separate cause of action, it is simply redundant"); *see also DiAntonio v. Vanguard Funding, LLC*, 111 F. Supp. 3d 579, 585 (D.N.J. 2015) ("[T]here is no separate cause of action for respondeat superior.").

Plaintiff's opposition brief styles this claim not as a standalone claim for relief, but rather as the theory of liability under which Plaintiff asserts several tort claims against the City pursuant to the New Jersey Tort Claims Act ("NJTCA"), N.J.S.A. 59:2–2(a). (Opp. Br. at 31–32). The Complaint includes the following common law counts: assault and battery (Count IX), malicious prosecution (Count X), gross negligence (Count XI), negligence, (Count XII), intentional infliction of emotional distress (Count XIII), and false imprisonment (Count XV). All of these counts are pled against "defendants sued [or named] in their individual capacity"—notably, then, not pled against the City. Only Plaintiff's respondeat superior claim (Count XIV) is pled against the City.

(Compl. at 25). The City argues that the respondeat superior claim is pled "without any hint that said count is tied to either Plaintiff's intentional or unintentional tort claims," and that the "City should not be forced to guess and make sense of Plaintiff's pleading." (ECF No. 15 at 6).

The Court notes that Plaintiff "repeats and re-alleges every allegation set forth above as if recounted at length" within his respondeat superior claim. (Compl. ¶ 163). Plaintiff also sufficiently alleges compliance with the NJTCA's notice requirements, N.J.S.A. 59:8–8(a) (requiring plaintiffs to file a notice of tort claim with the public entity being sued within 90 days of the incident and to wait for a response before filing a lawsuit). (Compl. ¶¶ 12–13). However, the Court agrees that the Complaint fails to sufficiently notify the City that Plaintiff intended to seek liability against it for the tort claims explicitly pled against the Defendants named in their individual capacities. Accordingly, at this stage, those claims are dismissed without prejudice and with leave for Plaintiff to move to file an amended complaint.

## IV. CONCLUSION

For the foregoing reasons, the Court dismisses the PPD from this action with prejudice. The Court further dismisses with prejudice Plaintiff's respondeat superior claim against the City of Paterson and Chief Fraher. The Court dismisses without prejudice the following claims against the City of Paterson and Chief Fraher: (1) Plaintiff's § 1983 claims; (2) Plaintiff's § 1985 claim; (3) Plaintiff's NJCRA claims; and (4) Plaintiff's common law tort claims. An appropriate Order accompanies this Opinion.

DATED: November 26th, 2018

HON. JOSE L. LINARES
Chief Judge, United States District Court

20