**KENNETH ROSELLINI (6047)**
**ATTORNEY AT LAW**
636A Van Houten Avenue
Clifton, New Jersey 07013
 (973) 998-8375 Fax (973) 998-8376
*Attorney for Plaintiff Mohamed Khalil*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MOHAMED KHALIL, <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF PATERSON, ELIZABETH STRAUB, in his individual capacity, JOSEPH DELGADO, in his individual capacity, OFFICER NUMBER 1, in his individual capacity, DOE OFFICERS 1-15, in their individual capacity, DOE CORPORATIONS 1-5, <br><br> Defendants. | CIVIL ACTION <br><br> Case No. : 2:18-cv-03241-JLL-SCM <br><br> JURY TRIAL DEMANDED <br><br> **AMENDED COMPLAINT and JURY DEMAND** |

Plaintiff Mohamed Khalil, by and through his counsel of record, Kenneth Rosellini, Esq., for his causes of action against Defendants, states as follows:

### PRELIMINARY STATMENT

1.      This is an action for violation of the Plaintiff's Civil Rights when the Defendants used excessive and unlawful force in perpetrating an arrest on the Plaintiff, causing severe and permanent injuries, and then maliciously prosecuting Plaintiff without probable cause, basis in law or fact. The Plaintiff seeks compensation for his injuries, pain and suffering, and violation of his Constitutional Rights.

## PARTIES

2.     Plaintiff Mohamed Khalil (referred to at times as "Khalil") is domiciled in the State of Jersey, residing now in the City of Paterson, Passaic County, New Jersey and at times relevant to this Complaint.   Khalil was born in Alexandria, Egypt and is of Egyptian descent.  At all times relevant to this Complaint he was a legal resident and is now a citizen of the United States of America.

3.     Defendant, the City of Paterson (referred to at times as "City") is a body politic and municipality of the State of New Jersey and was, at all times relevant to this Complaint, responsible for the oversight, maintenance, and organization of the Paterson Police Department.

4.     The Paterson Police Department ("Police Department"), was, at all relevant times, an entity owned and operated by the City responsible for law enforcement in and around Paterson, New Jersey.

5.     The Police Commissioner William Fraher ("Fraher"), was, at all relevant times, the Police Commissioner at the Police Department, and is liable for his actions in his official capacity and individual capacity done under color of state law.  Fraher is entrusted to protect the Constitutional rights of those he encounters and at all times relevant hereto was acting within the scope of his duties and authority, under color or title of state law supervised or controlled one or more of the Defendants herein, or acted in concert with one or more of the other individual Defendants in the performance or conduct of their actions.  He acted in his official and individual capacities on as an agent of the City of Paterson in violation of plaintiff's clearly established rights under color of state law, as alleged in this complaint.

6.     The Defendant Elizabeth Straub ("Straub") also known as Elizabeth Bolanos (believed to be her maiden name) was, at all relevant times, an Officer with the Police

Department assigned badge number #4545, and during relevant times to this Complaint and is liable for her acts and omissions in her individual capacity done under color of state law. This Defendant is entrusted to protect the Constitutional rights of those she encounters and at all times relevant hereto was acting within the scope of her duties and authority, under color or title of state law and acted in concert with one or more of the other individual Defendants in the performance or conduct of their actions. She is sued in her individual capacity for her intentional violation of plaintiff's clearly established rights under color of state law, as alleged in this complaint.

7.       The Defendant Joseph Delgado ("Delgado") was, at all relevant times, employed with the Police Department as a Sergeant, and during relevant times to this Complaint and is liable for his acts and omissions in his individual capacity done under color of state law. This Defendant is entrusted to protect the Constitutional rights of those he encounters and at all times relevant hereto was acting within the scope of his duties and authority, under color or title of state law and acted in concert with one or more of the other individual Defendants in the performance or conduct of their actions. He is sued in his individual capacity for his intentional violation of plaintiff's clearly established rights under color of state law, as alleged in this complaint.

8.       "Officer No. 1" was, at all relevant times, a male Police Officer with the Police Department whose name is unknown to the Plaintiff, and during relevant times to this Complaint and is liable for his acts and omissions in his individual capacity done under color of state law. This Defendant is entrusted to protect the Constitutional rights of those he encounters and at all times relevant hereto was acting within the scope of his duties and authority, under color or title of state law and acted in concert with one or more of the other individual Defendants in the

performance or conduct of their actions. He is sued in his individual capacity for his intentional violation of plaintiff's clearly established rights under color of state law, as alleged in this complaint.

9.      Doe Officers 1-15, John Doe, Jane Doe and/or Doe Corporation 1-5 ("the Doe Defendants"), are police officers, individuals and/or entities, whose identities are presently unknown to the Plaintiff, responsible for some or all of the acts or omissions alleged herein, and during relevant times to this Complaint and is liable for their acts done under color of state law. These Defendants are entrusted to protect the Constitutional rights of those they encounter and at all times relevant hereto was acting within the scope of their duties and authority, under color or title of state law and acted in concert with one or more of the other individual Defendants in the performance or conduct of their actions.

## JURISDICTION AND VENUE

10.      The jurisdiction of this court is invoked by plaintiffs pursuant to 28 U.S.C. 1331, 1343 and 1367, which confer original jurisdiction upon the court on the grounds that the action arises under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution, the Civil Rights Act of 1871, as amended, 42 U.S.C. 1981, 1983, 1985, 1986 and 1988.

11.      Venue in the New Jersey District is properly laid pursuant to 28 *U.S.C.* 1391, in so far as the following alleged unlawful conduct complained of in this complaint, which forms the factual and legal basis of the claims of the plaintiffs, arose within the geographical limits of this district.

12.      The Plaintiff has fully complied with all administrative prerequisites for commencement of his state law causes of action in that, on or about June 2, 2016, he filed a Notice of Tort Claim upon the Claims Administration, City of Paterson Law Department.

13.     More than six (6) months have elapsed since the Tort Claims Notice was filed and the Defendants have not responded.

## FACTUAL BACKGROUND

14.     On Sunday, March 6, 2016, at 1:30 am, the Plaintiff went to the Paterson Police Department to file a Complaint.

15.     The Officer on Desk Duty politely informed the Plaintiff that, due to a situation in the City, the Plaintiff should return at 4:30 am, the next shift, or leave his phone number to be called.  The Plaintiff thanked him and left.

16.     At 4:30 am, the Plaintiff called before returning to the Police Station.  The female Officer answering the phone was very rude to the Plaintiff, whom she recalled seeing there earlier.

17.      The female Officer, believed to be Straub, said that the Department would not send a car to take the complaint from the Plaintiff; the Plaintiff had to go back to the Station to file it, to which the Plaintiff responded "O.K.".

18.     The Plaintiff went back to the Station.  When he arrived, the Officer, believed to be Straub, greeted him very aggressively and said, "You Arab Muslim, you treat women badly and disrespect women", shocking Plaintiff.

19.     The Plaintiff asked where the Officer, believed to be Straub, was coming from; she responded that he had an Arab Muslim name.

20.     The Plaintiff told the Officer, believed to be Straub, that she did not know him to know how he treated women; she responded, "You disrespect women IN YOUR COUNTRY, not here."

21.     The Plaintiff told the Officer, believed to be Straub, that he had been in the United

States for 13 years. When he tried giving her the details of his complaint, the Officer, believed to

be Straub, obviously angry, accused him of lying.  Plaintiff stated to the officer he was well

aware that he would be legally responsible under oath and penalty of perjury in front of a Judge

for any statement which he would put in a Complaint with his signature.

22.     The Officer, believed to be Straub, continued to harass, belittle and disrespect the

Plaintiff as he was making his complaint.

23.     Eventually, the Plaintiff got up and stopped another officer and asked her to help

get his complaint finished.  He asked the Officer if he should leave and forget the report, but was

told, "No way.  If anyone gives you a hard time, even me, all you should say is, 'can I speak to

your supervisor.'"  Plaintiff thanked the officer, who proceeded to go upstairs.

24.     The Plaintiff returned to the Officer, believed to be Straub, to complete the

complaint, and she continued to give him a hard time.

25.     The Officer, believed to be Straub, told the Plaintiff that it would take 3 hours to

finish the complaint.  He asked if he could leave and come back later so that she could take her

time without pressure, and she responded, "No, if you leave, I'm not doing it. I'll stop, you have

to have a seat", to which Plaintiff responded "fine".

26.     The Plaintiff sat down and agreed to wait.  To pass the three (3) hours' time, he

opened his phone to check his email, messages, and Facebook.

27.     After a few minutes, the Plaintiff raised his head and saw a male Officer ("Officer

No. 1") playing with the ear and neck of the Officer, believed to be Straub, in an intimate way.

The Plaintiff tried to look away immediately, but the male Officer made eye contact with him.

28.     Officer No. 1 told the Officer, believed to be Straub, that the Plaintiff saw them,

and Plaintiff believes that the officers thought he was recording them.

29.     The Officer, believed to be Straub, approached the Plaintiff, raising her voice, asking him questions about his complaint and again accusing him of lying in it, to which again Plaintiff responded that he understood the importance of stating the truth under oath on the complaint and the repercussions if he did not.

30.     After three (3) hours, the Officer, believed to be Straub, told the Plaintiff that she was not making the complaint unless he removed a certain part of it.  When he asked why, the Officer, believed to be Straub, said, "Okay, you have to leave, Mother Fucker."

31.     Plaintiff then told the Officer, believed to be Straub, that she did not have to use that language, that Plaintiff was also a City employee like her, and that he was simply trying to file a complaint.

32.     Because of what the other female officer had told him, the Plaintiff asked to speak to the Supervisor of the Officer believed to be Straub, believed to be Delgado.

33.     The Supervisor, believed to be Delgado, came out running from the back shouting, "You have to leave, Mother Fucker, I'll Fuck you up, I'll Fuck you up," and kept pushing the Plaintiff out the door.

34.     The Plaintiff asked the Supervisor, believed to be Delgado, to stop touching him and raised his arms in the air so that no one could say the Plaintiff touched them, while saying, "I'm leaving."   He told them he was a City employee, worked with the Mayor and Police Director.

35.     The Supervisor, believed to be Delgado, responded with, "Go Fuck your Joey Torres [Mayor]; go Fuck your Speziale [Police Director], go tell them to Fucking pay me my Fucking overtime," while using his body to push the Plaintiff outside, despite the fact that Plaintiff was already going outside on his own.

36.     As the Plaintiff was heading to his car, Officer No. 1 shouted, "No, don't let him go, he was recording us!"

37.     Officer No. 1 came running after the Plaintiff, kicking, and snatched the phone from the Plaintiff's hand.  He deleted everything in the phone to format and break it to be sure nothing was recorded.

38.     The female Officer, believed to be Straub, came outside and said, "You, Mother Fucker, are under arrest."

39.     When the Plaintiff asked why, the Officer, believed to be Straub, said he was under arrest for "trespassing."

40.     When the Plaintiff asked how that could be when he already went outside the Police Station and it is a public complex, the Officer, believed to be Straub, answered, "you Mother Fucker, I'll make you a criminal.  I'll give you charges so even if the judge wants to downgrade, you will still be a criminal.  You said you work with us in the City?  I'll make you lose your job because you will be a criminal."

41.     The Supervisor, believed to be Delgado, and six other Officers came outside and were hitting and punching the Plaintiff in his chest, kidneys, and legs.

42.     The Supervisor, believed to be Delgado, began hitting the Plaintiff's body against the concrete.  When he saw that the Plaintiff was trying to protect himself from injury, the Supervisor held the Plaintiff's head from the back and banged it on the concrete, walls, glass door, elevator, and pushed the Plaintiff against every wall and metal bar that he could while dragging the Plaintiff from outside the Police Station to the upstairs.

43.     The Supervisor, believed to be Delgado, continually hit and punched the Plaintiff, slurring "Fuck" this and "Fuck" that, along with disparaging and hateful remarks about the

Plaintiff's religion and background.

44.     While hitting the Plaintiff, the Supervisor, believed to be Delgado, said, "If the Israeli police arrested you, you would not open your mouth; they would shoot and kill you.  You are lucky here."

45.     The Plaintiff told the Supervisor, believed to be Delgado, that he was not from Palestine but Egypt, which is at peace with Israel.

46.     The female Officer, believed to be Straub, asked the other Officers to pick and choose charges to use against the Plaintiff to be certain that he would still have a criminal record even if the judge lowered or dismissed some of them.

47.     The female Officer, believed to be Straub, said, "I'll make sure you lose your job and your citizenship in the immigration"; and "I will make sure you spend all weekend here" even after the Plaintiff begged to be released because he had to open the City Museum that morning as part of his job duties.

48.     The female Officer, believed to be Straub, hid the paperwork so that the Plaintiff would miss the Judge's morning call and not be able to be released on bail in time to open the City Museum for what was the Celebration of Lou Costello's 110th birthday anniversary.

49.     Upon information and belief, Straub signed the Plaintiff's Arrest Report as Arresting Officer and Delgado signed as her Supervisor.

50.     The Supervisor, believed to be Delgado, kept saying nasty things to the Plaintiff, telling the officers to put him in "lucky cell number 23."

51.     "Lucky cell number 23" was dirty, filthy, had traces of snot and spit on the walls, and had a phone that did not work.

52.     The Supervisor, believed to be Delgado, and officers took the Plaintiff's clothing,

leaving him to sleep on the bare metal bed.

53.     The Plaintiff asked the officer who took his fingerprints when he would be permitted to leave because he had to open the City Museum.  The officer told the Plaintiff that he could not find his name or paperwork to start the process.  The officer searched until he found it downstairs at the front desk.

54.     When the officer returned from looking for and finding the Plaintiff's paperwork, he turned nasty.  When the Plaintiff asked why he had changed his demeanor, the officer explained that the other officers told him that the Plaintiff attacked an officer and tried to punch him.

55.     The Plaintiff explained to the officer that he did not and would not do that, that he was simply at the Police Department to file a complaint, that he worked for and was well-respected in the City, and there were cameras everywhere to show what occurred.

56.     The officer then said he believed the Plaintiff, and knew that the officers were a nasty gang downstairs, and even he was apprehensive to be nice to the Plaintiff lest the others find out.

57.     The Plaintiff was released from the Police Station at 7:45 pm, 17.5 hours after he came in to file a complaint.  He went directly to the Mayor's house to show him his beaten and bruised physical condition.

58.     The Mayor advised the Plaintiff to go to the Chief and Police Director (Jerry Speziale) the next morning to report the incident to Internal Affairs.

59.     The Plaintiff went to St. Joseph's Hospital for examination.  Upon leaving, he began feeling feverish but had to go to Court for his appearance and Internal Affairs.

60.     The Plaintiff went to Speziale's office, who reacted in shock at what had

happened, upon which Plaintiffs' injuries were photographed.  The Plaintiff also went to Internal Affairs.

61.     The Plaintiff returned to the Hospital with a fever above 100 degrees, and learned that he had a contusion on his chest and a bacterial infection.

62.     The Plaintiff went home and slept until the following morning.  When he awoke, he found blood in his urine and went back to the hospital.  Tests were taken, leading to the conclusion that the blood was caused from being punched and kicked in the kidneys.

63.     The Plaintiff missed work on March 6, 2016, when it was his responsibility to open the Museum for a Lou Costello event, and missed the following two (2) weeks of work due to his medical condition.

64.     For over eight years, in fact, the Plaintiff had never missed opening the Museum on the weekend, with the exception of an approved absence to attend a White House reception in December 2008 upon invitation of the First Lady in honor of his Christmas Ornament for New Jersey selected by Congressman Pascrell.

65.     As of March 25, 2016, the Plaintiff was still coughing, suffering from shortness of breath, and was unable to lift his arm above his head without pain.

66.     Since the incident, plaintiff continues to have several incidents of reoccurrence of the bacterial infection with dizziness due to coughing and shortness of breath with pinching pains in chest and rib area.

67.     Plaintiff continues to suffer physical and psychological effects from the injuries caused by the Defendants as a result of the March 6, 2016 incident.

68.     The charges filed against Plaintiff by Straub included Disorderly Conduct (*N.J.S.A.* 2C:33-2B), Trespassing (*N.J.S.A.* 2C:18-3B(1)), Obstructing Administration of Law

(*N.J.S.A.* 2C:29-1A), and Resisting Arrest (*N.J.S.A.* 2C:29-2A(1)).

69.    On or about March 24, 2016, Plaintiff's counsel submitted a letter to Internal Affairs demanding that all evidence concerning its investigation of this matter be preserved.

70.    In the course of his defense against the criminal charges, Plaintiff demanded discovery of all evidence against him and all exculpatory evidence.

71.    In the course of his defense against the criminal charges, on or about April 4, 2016, Plaintiff subpoenaed the City of Paterson for the following:

> Any and all documents, in the possession of the City of Paterson, New Jersey, including the Paterson Police Department, concerning the maintenance records of any camera and video recording device of any kind operated by the City of Paterson, including the Paterson Police Department, within a 1,000-foot radius of the Paterson Police Department located at 111 Broadway, Paterson, New Jersey, for the period from October 1, 2016 through April 4, 2016.
>
> The Video/Visual Recordings of any and any camera and video recording device of any kind operated by the City of Paterson, including the Paterson Police Department, within a 1,000-foot radius of the Paterson Police Department located at 111 Broadway, Paterson, New Jersey, from the period of 11:00 P.M., Saturday, March 5, 2016 to 8:00 A.M. Monday, March 7, 2016.

72.    In connection with the Internal Affairs investigation, Plaintiff was informed by the Police Department that many of the video cameras at the police station were inoperable, but that there was some video footage inside the police station.

73.    Plaintiff was shown this video footage by an Internal Affairs officer.

74.    This footage, however, has never been provided to the Plaintiff, and the City of Paterson and the Police Department refused to respond to Plaintiff's subpoena.

75.    On June 1, 2016, all criminal charges against the Plaintiff were dismissed by the Honorable J. Kevin McDuffie, J.M.C., upon motion made by the Plaintiff and unopposed by the prosecution.

76.    On or about June 3, 2016 Plaintiff filed a Tort Claim's Notice with the City of Paterson.

77.     The City of Paterson has a history and pattern of its police officers arresting persons without probable cause and then using excessive force in connection with those arrests.

78.     These false arrests and excessive force incidents were of public record which, upon information and belief, the City of Paterson had knowledge.

79.     If not for the City of Paterson's failure to properly train its police officers, these false arrests and excessive force incidents would not have occurred.

80.     If not for the failure of the City of Paterson to properly train its police officers as to the proper procedure for determining probable cause to make an arrest and the appropriate use of force in effecting arrests, the Plaintiff would not have been harmed.

81.     There have been a number of publicly reported incidents, civil rights lawsuits and settlements, over the past several years of excessive force by Paterson Police in cases without probable cause where excessive force was used when the person was not using any force to resist arrest.

82.     Upon information and belief, decision makers in the City of Paterson, including but not limited to its police chief, are aware of the following.

83.     In March of 2010, City of Paterson Police Officers Anthony Castranova, Terrence Duffy, and Kelvin Matos used excessive force in arresting a suspected burglar. *See Colon v. City of Paterson*, No. CIV. 12-1653 WJM, 2014 WL 4441503, at *1 (D.N.J. Sept. 9, 2014).

84.     In that case, "at least two police officers 'began hitting [the person being arrested] with a long, hard metal object, either a night stick or a flash light as he lay on the ground in handcuffs and not resisting . . . .'" *See Colon v. City of Paterson*, No. CIV. 12-1653 WJM, 2014 WL 4441503, at *1 (D.N.J. Sept. 9, 2014).

The officers hit the top and rear part of Colon's head three or four times with the baton while he was lying face down and handcuffed. (Colon Decl. at ¶ 4). They also hit him

multiple times on other parts of his body, including his ribs, back, and chest while he was lying on the pavement. (Colon Decl. at ¶ 5). The police then dragged him face-down to the patrol vehicle, causing the skin to come off of his arm, elbow, knee, and hand. (Plaintiff's Deposition at 40–41).

See *Colon v. City of Paterson*, No. CIV. 12-1653 WJM, 2014 WL 4441503, at *2 (D.N.J. Sept. 9, 2014).

85.     In *Colon v. City of Paterson* statistical evidence was submitted probative of an existing pattern of excessive force by City of Paterson Police Officers.

Plaintiff seeks liability under Section 1983 against Paterson on theories that the city had customs of failing to properly investigate civilian complaints of excessive force and failing to train police in the use of force. Plaintiff has brought forth sufficient evidence to prove both theories.
**i. Failure to Investigate Civilian Complaints of Excessive Force**
In support of his claim that the PPD failed to properly investigate citizen complaints of excessive force, Plaintiff brings forth the following statistics about claims of excessive force against the PPD.

**Reporting Period Number of cases Investigated Number of cases Sustained Number of cases EXON–NS–UNF–ADMC**[1]

| | | | |
|---|---|---|---|
| **2005** | 87 | 2 | 85 |
| **2006** | 72 | 1 | 70 |
| **2007** | 72 | 0 | 72 |
| **2008** | 132 | 1 | 131 |
| **2009** | 126 | 0 | 126 |
| **2010** | 121 | 1 | 120 |

See *Colon v. City of Paterson*, No. CIV. 12-1653 WJM, 2014 WL 4441503, at *6 (D.N.J. Sept. 9, 2014).

86.     Upon information and belief, the number of excessive-force complaints filed by the public against Paterson Police Officers, decreasing for a number of years, again increased from 33 in 2015 to 44 in 2016.

87.     A public database that tracks the use of force in incidents of police arrests determined that between 2012 and 2016 there was a rate of 48 incidents of use of force in arrests

per 1,000 arrests, which was a rate higher than 401 comparative police departments out of a survey of 468. *See* http://force.nj.com/database/pd-dept/paterson-passaic.

88.     "The Force Report, a 16-month investigation by NJ Advance Media for NJ.com, found New Jersey's system for tracking police force is broken, with no statewide collection or analysis of the data, little oversight by state officials and no standard practices among local departments.  In an unprecedented undertaking, the news organization filed 506 public records requests and collected 72,609 use-of-force reports."   *See* https://www.nj.com/news/index.ssf/2018/11/nj_police_use_of_force_punch_kick_pepper_spray_sho.html.

89.     The Force Report lists the approximate date of the incident in the within complaint as involving the use of force by Defendant Elizabeth Straub in an arrest, but does not include the fact that the person being arrested, Plaintiff Khalil, was injured in the arrest, which is further evidence that the City of Paterson is not training its officers to keep accurate records of incidents.

90.     The Force Report does not list Defendant Joseph Delgado as being involved in an arrest involving the use of force on March of 2016, when Plaintiff was arrested, which again indicates that the City of Paterson is failing to train its police officers to keep accurate records in order to prevent further civil rights violation from occurring.

91.     While Plaintiff is not aware at this time of any specific previous complaints against the individual officers named in this case, there are also additional officers involved which Plaintiffs do not yet have information as to their identities, and the City of Paterson should not be able to avoid liability at the motion to dismiss stage of the litigation due to the fact its

officers failed to file a proper police report including the names of all the police officers involved in this incident.

92.     In the case of *Simmons v. City of Paterson*, No. 2:11-CV-00640 WJM, 2012 WL 2878077 (D.N.J. July 13, 2012), the District Court for the District of New Jersey found it probative of *Monell* liability for the City of Paterson that there was evidence that superior officers were derelict in investigating an alleged incident of excessive force against the Paterson Police Department is evidence "bespeaking a permissive culture in the department" to defeat a motion for summary judgment be the City of Paterson.  *See Simmons v. City of Paterson*, No. 2:11-cv-00640-KM-MAH, Docket Entry 98, page 6, Filed 08/01/16.

93.     As of 2010, the City of Paterson's "use of force training . . . [was] only classroom training . . . ."  *See Colon v. City of Paterson*, No. CIV. 12-1653 WJM, 2014 WL 4441503, at *8 (D.N.J. Sept. 9, 2014).

94.     As of 2010, the City of Paterson's use of force training utilized "an outdated use of force concept called the "continuum of force."  *See Colon v. City of Paterson*, No. CIV. 12-1653 WJM, 2014 WL 4441503, at *9 (D.N.J. Sept. 9, 2014).

95.     In *Colon v. City of Paterson*, there was evidence that City of Paterson

use of force trainings that it is permissible to use "one level of force above whatever someone else is using against you." (Castranova Dep. at 59). According to Plaintiff's expert, this is incorrect; it is only permissible for police to use the same level of force that a suspect is using against the officer. (Chapman Report at 19).

*See Colon v. City of Paterson*, No. CIV. 12-1653 WJM, 2014 WL 4441503, at *9 (D.N.J. Sept. 9, 2014).

96. In one case involving the City of Paterson it agreed to pay

$25,000 each to two brothers, Juan Geronimo and Akenaton Geronimo-Arias, who claimed they were beaten by four police officers in the parking lot of Las Palmas Restaurant on Madison Avenue in May 2014. The lawsuit claimed that the two brothers were attacked without warning by the officers, who allegedly punched, kicked and

dragged them into a police vehicle. The lawsuit said that aggravated assault and resisting arrest charges files against the two brothers eventually were dismissed.

*See*  https://www.northjersey.com/story/news/paterson-press/2018/03/24/paterson-new-jersey-nj-pay-80-k-settlements-end-two-police-excessive-force-cases/453589002/.

97.     In another case settled by the City of Paterson (see *Linette Vazquez v. City of Paterson*, 2:13-cv-00433-WJM-MF) (dismissed as settled on May 13, 2013), the following facts were alleged in the Complaint:

10. On or about March 15, 2011, at approximately 3:00a.m. Plaintiff LINETTE VAZQUEZ, age 27, was a patron of the Egg Platter diner located on the comer of Crooks A venue and Getty Avenue in Paterson, New Jersey, 07505.

11. At same time and place, Defendants PATERSON POLICE OFFICER ANDRE JACKSON, PATERSON POLICE OFFICER MICHAEL A VILA, AND PATERSON POLICE OFFICER MICHAEL MEZEY were also patrons of the Egg Platter diner.

12. The Plaintiff LINETTE VAZQUEZ along with three friends were seated in a booth next to the above-mentioned Defendants when, without cause or provocation, the Defendants began slurring sexually explicit, degrading, and sexist epithets at the Plaintiff LINETTE VAZQUEZ and using profane, abusive, and threatening language directed at the Plaintiff LINETTE VAZQUEZ.

13. Defendants PATERSON POLICE OFFICER ANDRE JACKSON, PATERSON POLICE OFFICER MICHAEL A VILA, AND PATERSON POLICE OFFICER MICHAEL MEZEY also made vulgar remarks regarding the attire and profession of the Plaintiff and showed a sexist animus and bias against females.

14. While enduring the Defendants' verbal abuse and threatening conduct, another officer Defendant PATERSON POLICE OFFICER JUAN C. RODRIGUEZ arrived to the Egg Platter Diner and threatened to arrest Plaintiff LINETTE VAZQUEZ without reason.

15. At approximately 3:40 a.m. on the aforementioned date, Plaintiff LINETTE VAZQUEZ was arrested without probable cause and taken into police custody.

16. While detained at the Paterson Police Department and handcuffed to a bench, Plaintiff LINETTE VAZQUEZ, was repeatedly struck, beaten and choked by Defendant PATERSON POLICE OFFICER MICHAEL A VILA in the presence of JOHN and JANE DOES 1-10 (unidentified police officers).

17. As a result of this incident, Plaintiff LINETTE VAZQUEZ sustained serious and permanent physical injuries as well as psychological and emotional trauma, fear and humiliation. She has suffered permanent damages due to the discriminatory acts and unlawful conduct of the Defendants herein mentioned.

98.     It was reported that there was video evidence of the Linette Vazquez incident and that it was settled for $200,000.  *See*  http://njcivilsettlements.blogspot.com/2013/08/paterson-

pays-200000-to-settle-police.html and https://abc7ny.com/archive/8967276/ ("Linette Vazquez says without this video it would be her word against that of a Paterson police officer. She says it's hard to watch the tape showing off-duty officer Michael Avila slamming her to the ground while she was handcuffed sitting on a bench in a holding cell nearly two years ago.").

99.    "January 9, 2017, the City of Paterson (Passaic County) agreed to pay $60,350 to [Jose A. Colon] who said that city police beat him with batons and flashlights after he was already lying handcuffed on the ground." *See* https://www.nj.com/passaic-county/index.ssf/2017/08/paterson_pays_60k_to_car_burglar_who_claimed_cops_beat_him.html.

100.    In the within case, Plaintiff Khalil was not using any force to resist arrest, yet the defendant police officers continued to use force against Khalil.

101.    This is evidence that the City of Paterson is still failing to properly train its police officers in use of force, directly causing excessive force use against the Plaintiff when he was unlawfully arrested by City of Paterson Police.

102.    In November of 2012 the City of Paterson settled two excessive force claims against its police:

> The $65,000 settlement approved Tuesday night would go to Sharonda Davis, who is a Carroll Street resident, according to her lawsuit. Davis said in court papers that she was assaulted and falsely arrested on July 21, 2009 when she went to visit her brother at the hospital, where she says he was taken after being beaten by police. Davis identified her attackers as Sgt. Edwin Rodriguez, Officer Christopher Scudieri and Officer A. Alvarez. She said she was imprisoned for two hours and charged with obstruction of a government function, but that she was acquitted in municipal court in July 2010. . . . .

> In the other case, the council authorized its attorney to settle a lawsuit with Dennis DeLuccia somewhere within an undisclosed range of payment. City law director said the council would have to approve another resolution setting the precise amount of the settlement after the deal is finalized. DeLuccia accused police officers who responded to his River Terrace home of pushing him to the ground and against a radiator, resulting in a

fracture of his thigh bone, according to his lawsuit. DeLuccia, who is seeking more than $75,000 in the lawsuit, said officers came to his home on Feb. 19, 2007 saying they were responding a domestic dispute. DeLuccia said he allowed the officers into his home, but refused to let them inside a bedroom where he said his father was sleeping, according to the lawsuit. DeLuccia said he was knocked down when he asked the officers for a warrant.  The only other person in the apartment at the time was DeLuccia's father, who said there was no domestic incident, according to the lawsuit. DeLuccia's lawsuit accuses Officers Vaughn Patterson and Alexander Ilic of using excessive force against him.

*See*     https://www.tapinto.net/towns/paterson/articles/city-moves-to-settle-two-lawsuits-against-paterso.

103.    In June of 2017, the City of Paterson settled an excessive force lawsuit for $140,000 where a Paterson resident Christian Reyes alleged that City of Paterson "officers became 'belligerent' and threw him against a vehicle before handcuffing, searching, and finally arresting him on charges that were later dropped."     *See* https://www.tapinto.net/towns/paterson/articles/paterson-city-council-approves-settlement-in-laws.

104.    Paterson Councilman William McKoy, "expressed the need to 'put into place some proper systems and procedures" to avoid this issue going forward, adding that "This really reflects an administrative problem', and City Council President Ruby Cotton was "counting on these new practices to curtail future incidents, stating that 'looking back two years from now I'm hoping that we that don't have to come across cases like this.'     *See* https://www.tapinto.net/towns/paterson/articles/paterson-city-council-approves-settlement-in-laws.

105.    Plaintiff Khalil suffered excessive force injuries on charges that were later dismissed, similarly to Christian Reyes' matter, which is probative of the fact that the City of Paterson either failed to implement or did not sufficiently implement use of force training.

106.    In April of 2018 two Paterson Police Officers, Jonathan Bustios and Eudy Ramos,

were charged federally with crimes involving false arrests and the failure to file an accurate

police report.   *See*   http://njcivilsettlements.blogspot.com/2017/08/paterson-paid-60350-to-

convicted-man-

to.html?utm_source=feedburner&utm_medium=feed&utm_campaign=Feed%3A+NjCivilSettle

ments+%28NJ+Civil+Settlements%29.

107.   In January of 2017 it was reported that the City of Paterson:

> agreed to pay $610,000 to settle a lawsuit filed by two shooting suspects who
> were handcuffed while they were kicked, dragged and beaten in 2011 by about a
> dozen Paterson police officers.
>
> The incident, which was recorded by two private security cameras, happened
> shortly after one of the men allegedly fired a shot at an off-duty Paterson police
> officer outside a city bar. Police then pursued the suspect, who fled in an SUV,
> and a large number of officers converged on the scene when the arrests were
> made outside the Paterson home of one of the men.
>
> "We really had no choice, everything was on video," said Councilman Michael
> Jackson, when asked about the approval of the settlement. "We knew that if this
> went to trial we were not going to win. We could have lost millions of dollars."

(*See*   https://www.northjersey.com/story/news/paterson-press/2017/01/05/paterson-oks-610k-

settlement-police-brutality-case/96204984/).

108.   City of Paterson Police Officer Roger Then was indicted in federal court for

conduct which he committed on March 5, 2018 in conspiracy with City of Paterson Police

Officer Ruben McAusland, who pled guilty to federal criminal civil rights charges, in connection

with an assault of person in the City of Paterson in which the victim was punched in the face in

retaliation for that person exercising their First Amendment Rights of Freedom of Speech.

109.   The City of Paterson Police Officers failed to include the unlawful assault in the

police incident report which they filed.

110.   This indictment and the incident were published and upon information and belief

known to the City of Paterson.  (*See* https://www.justice.gov/usao-nj/pr/paterson-police-officer-charged-civil-rights-and-other-offenses).

111.    Recently 27-year-old Jameek Lowery died in Paterson Police custody as result of, upon information and belief, excessive force by the Paterson Police Department on January 5, 2019, when he was taken into Paterson Police custody after he arrived at Paterson Police Headquarters seeking help from the Paterson Police.

112.    "Family members say Lowery had a broken cheekbone and fractured eye socket when he died. They believe officers assaulted him in the ambulance." (*See* http://amsterdamnews.com/news/2019/jan/10/protest-paterson-jameek-lowery/).

113.    As a result of the pattern of excessive force by the Paterson Police Department in placing persons into police custody, on or about January 17, 2019, the "mayor of Paterson has announced several new initiatives aimed at repairing trust between police and the community" and "acknowledged that allegations of excessive force and corruption have eroded trust in Paterson's police department." (*See* https://www.nbcnewyork.com/news/local/Paterson-Mayor-Unveils-New-Police-Related-Initiatives-Following-Jameek-Lowerys-Death-504504141.html).

114.    The Mayor of Paterson, referring to the recent incident involving Jameek Lowery, stated,  "It didn't start with this incident, or this administration, I want to reassure you that your concerns have been heard." (*See* https://www.nbcnewyork.com/news/local/Paterson-Mayor-Unveils-New-Police-Related-Initiatives-Following-Jameek-Lowerys-Death-504504141.html).

115.    "An independent audit of the police department, an effort to buy body cameras for police officers and the creation of a citizen advisory board are among the initiatives [Mayor] Sayegh is pushing." (*See* https://www.nbcnewyork.com/news/local/Paterson-Mayor-Unveils-New-Police-Related-Initiatives-Following-Jameek-Lowerys-Death-504504141.html).

**FIRST COUNT**

**CLAIM UNDER 42 U.S.C. §1983 (EXCESSIVE FORCE) AGAINST DEFENDANTS STRAUB, DELGADO, OFFICER NO. 1, AND DOE OFFICER DEFENDANTS FOR VIOLATION OF THE FOURTH AMENDMENT**

116.     The Plaintiff repeats and re-alleges every allegation set forth above as if recounted at length herein.

117.     The conduct complained of was committed by the above Defendants while acting under color of state law; and was performed in bad faith.

118.      This conduct deprived the Plaintiff of rights, privileges, or immunities secured by the Constitution of the United States, Fourth Amendment, *to wit*, the right to be free from excessive force and harm to his person.

119.     The female Officer, believed to be Straub, was individually involved in the aforesaid deprivation of the Plaintiff's rights in utilizing excessive force.

120.     Officer No. 1 was individually involved in the aforesaid deprivation of the Plaintiff's rights in utilizing excessive force.

121.     The Supervisor, believed to be Delgado, was individually involved in the aforesaid deprivation of the Plaintiff's rights in utilizing excessive force.

122.     Numerous other "Doe Officers" were individually involved in the aforesaid deprivation of the Plaintiff's rights in utilizing excessive force.

123.     Upon information and belief, some or all of the other individual Defendants were also involved.

124.     Therefore, the Defendants are liable for damages, punitive damages, attorney's fees, costs, and all other relief that the Court deems just and proper.

**WHEREFORE**, plaintiff demands judgment, pursuant to 42 *U.S.C.* 1983, against the defendants, jointly and severally for compensatory, pain and suffering, and punitive damages in an amount of ten million dollars ($10,000,000) or to be determined at trial, plus interest, attorney fees pursuant to 42 *U.S.C.* 1988, costs of suit, and such other and further relief the court deems equitable and just.

## SECOND COUNT

### CLAIM UNDER 42 U.S.C. §1983  (WRONGFUL ARREST) AGAINST DEFENDANTS STRAUB, DELGADO, OFFICER NO. 1, AND DOE OFFICER DEFENDANTS FOR VIOLATION OF THE FOURTH AMENDMENT

125.    The Plaintiff repeats and re-alleges every allegation set forth above as if recounted at length herein.

126.    The conduct complained of was committed by the Defendants while acting under color of state law.

127.    This conduct deprived the Plaintiff of rights, privileges, or immunities secured by the Constitution of the United States, *to wit*, the right to be free from wrongful arrest under the Fourth Amendment.

128.    The female Officer, believed to be Straub, Supervisor, believed to be Delgado, Officer No. 1, and the other Defendants were individually involved in the aforesaid deprivation of the Plaintiff's rights in arresting him without authority or cause.

129.    The Defendants did not, and could not have, reasonably believed that the arrest was lawful, in light of clearly established law and/or the information they possessed at the time.

130.    Therefore, the Defendants are liable for compensatory damages, punitive damages, costs, attorney fees, and all other relief that the Court deems just and proper.

**WHEREFORE**, plaintiff demands judgment, pursuant to 42 *U.S.C.* 1983, against the defendants, jointly and severally for compensatory, pain and suffering, and punitive damages in an amount of ten million dollars ($10,000,000) or to be determined at trial, plus interest, attorney fees pursuant to 42 *U.S.C.* 1988, costs of suit, and such other and further relief the court deems equitable and just, including prospective injunctive relief.

### THIRD COUNT

**CLAIM UNDER 42 U.S.C. §1983  (FALSE IMPRISONMENT) AGAINST DEFENDANTS STRAUB, DELGADO, OFFICER NO. 1, AND DOE OFFICER DEFENDANTS FOR VIOLATION OF THE FOURTH AMENDMENT**

131.    Plaintiff repeats and re-alleges every allegation set forth above as if recounted at length herein.

132.    Defendants acting in their personal capacities and by their own individual acts, and at all times under the color of state law, each actively participated in, directed and/or knew of, and acquiesced in the false imprisonment of plaintiff, as detailed in this complaint.

133.    Plaintiff was falsely imprisoned by defendants and unlawfully detained, without his consent, in violation of plaintiff's clearly established Fourth and Fourteenth Amendment rights.

134.    As a direct and proximate result of the violation of his Fourth Amendment rights to be free from unreasonable searches and seizures as alleged in this complaint, plaintiff has suffered and will continue to suffer severe and permanent damages.

**WHEREFORE**, plaintiff demands judgment, pursuant to 42 *U.S.C.* 1983, against the defendants, jointly and severally for compensatory, pain and suffering, and punitive damages in an amount of ten million dollars ($10,000,000) or to be determined at trial, plus interest, attorney

fees pursuant to 42 *U.S.C.* 1988, costs of suit, and such other and further relief the court deems equitable and just.

## FOURTH COUNT

### CLAIM UNDER 42 U.S.C. §1983  FOR VIOLATION OF THE FOURTH AMENDMENT AGAINST DEFENDANTS CITY OF PATERSON AND ALL SUPERVISORS

135.    Plaintiff repeats and re-alleges every allegation set forth above as if recounted at length herein.

136.    The City failed to adopt policies or training that enforced the laws and Constitutional rights of members of the public.

137.    The City failed to adopt policies or training that enforced the laws and Constitutional rights of members of the public.

138.    Upon information and belief, the City failed to adopt and fund necessary policies and training programs that would ensure that the City of Paterson, Paterson Police Department, Police Chief, and its Officers would effectively transmit and comply with State and Federal laws and Constitutional rights applicable to any person in pursuit or custody.

139.    Upon information and belief, as a direct and proximate result of the City's failure to adopt and fund necessary policies and training programs, City employees were denied the chance to effectively transmit and comply with State and Federal laws, and ensure the Constitutional rights of any person being pursued or taken into custody.

140.    Upon information and belief, the City failed to adopt and fund necessary policies and training programs that would recognize and discipline its agents, servants and/or employees for the use of excessive force, or to take actions to prevent injury and death due to the use of excessive force to individuals in its custody.

141.    Upon information and belief, as a direct and proximate result of the City's failure to adopt and fund necessary policies and training program, City employees were denied the chance to recognize and discipline its agents, servants, and/or employees for the use of excessive force, failed to determine that the Plaintiff was at risk for the use of excessive force, and failed to take steps to prevent injury to the Plaintiff due to the use of excessive force.

142.    Upon information and belief, the City failed to adopt and fund necessary policies and cultural awareness training programs that would ensure that the City of Paterson, Paterson Police Department, Police Chief, and its Officers would effectively transmit and comply with State and Federal laws and Constitutional rights applicable to any person in pursuit or custody.

143.    The Defendants failed to take the Plaintiff's police report.

144.    The involved Officers, including, upon information and belief, Straub and Delgado, failed to notify Superiors of the incident.

145.    Instead, the individual Defendants sought to cover up the harm that the Plaintiff sustained by destroying possible evidence (his phone), issuing false reports, and pursuing false charges.

146.    Delgado occupied a supervisory position in relation to Straub and the other involved Officers.

147.    Upon information and belief, numerous supervisors were made aware of the incident and failed to investigate it.

148.    The Defendants' policies and procedures were enacted or continued in a manner that was reckless or callously indifferent to the Plaintiff's constitutional and statutory protected constitutional rights, and the Plaintiff is thus entitled to recover punitive damages, as permitted by law.

149.    The Police Supervisors should have been notified or been made aware of an arrest occurring in a public lobby of the Police Station following an attempt to make a Police Report by a member of the public.

150.    Among other things, Police Supervisors should have been concerned about the chilling effect such arrest would have on crime reporting.

151.    Furthermore, once the Plaintiff reported the incident to the Mayor and Police Director (who ordered a review), Internal Affairs Detectives had an obligation to investigate the incident as a possible crime against the Plaintiff, which should have included a check of various surveillance cameras, station records, CAD records, interviews, and arrest reports.

152.    Upon information and belief, the number of excessive-force complaints filed by the public against Paterson Police Officers increased from 33 in 2015 to 44 in 2016.

153.    As a direct and proximate result of the Defendants' policy, custom, and practice, the Plaintiff was caused to sustain personal and lasting injuries.

**WHEREFORE**, plaintiff demands judgment, pursuant to 42 *U.S.C.* 1983, against the defendants, jointly and severally for compensatory, pain and suffering, and punitive damages in an amount of ten million dollars ($10,000,000) or to be determined at trial, plus interest, attorney fees pursuant to 42 *U.S.C.* 1988, costs of suit, and such other and further relief the court deems equitable and just, including prospective injunctive relief..

## FIFTH COUNT

## CLAIM UNDER 42 U.S.C. §1983 MALICIOUS PROSECUTION AGAINST DEFENDANTS STRAUB, DELGADO, OFFICER NO. 1, AND DOE OFFICER DEFENDANTS FOR VIOLATION OF THE FOURTH AMENDMENT

154.    Plaintiff repeats and re-alleges every allegation set forth above as if recounted at length herein.

155.    Defendants violated plaintiff's Fourth Amendment rights by initiating the prosecution of plaintiff for Disorderly Conduct (*N.J.S.A.* 2C:33-2B), Trespassing (*N.J.S.A.* 2C:18-3B(1)), Obstructing Administration of Law (*N.J.S.A.* 2C:29-1A), and Resisting Arrest (*N.J.S.A.* 2C:29-2A(1)).

156.    Defendants lacked probable cause to initiate the proceedings.

157.    The criminal proceedings ended in plaintiff's favor and all charges were dismissed upon plaintiff's motion to dismiss.

158.    Defendants acted maliciously or for a purpose other than bringing plaintiff to justice.

159.     As a consequence of the proceeding, [plaintiff] suffered a significant deprivation of 20 liberty.

**WHEREFORE**, plaintiff demands judgment, pursuant to 42 *U.S.C.* 1983, against the defendants, jointly and severally for compensatory, pain and suffering, and punitive damages in an amount of ten million dollars ($10,000,000) or to be determined at trial, plus interest, attorney fees pursuant to 42 *U.S.C.* 1988, costs of suit, and such other and further relief the court deems equitable and just.

## SIXTH COUNT

### CONSPIRACY UNDER 42 U.S.C. §1985 AGAINST DEFENDANTS STRAUB, DELGADO, OFFICER NO. 1, AND DOE OFFICER DEFENDANTS

160.    Plaintiff repeats and re-alleges every allegation set forth above as if recounted at length herein.

161.    Defendants, acting in their individual capacities and by their own individual acts, and at all times under the color of state law, conspired between and among themselves beginning on or about March 6, 2016 and continued thereafter, to violate plaintiff's constitutional and civil rights by engaging in the conduct described in this complaint.

162.    In furtherance of that conspiracy, and to inflict an unconstitutional injury on plaintiff, defendants engaged in the acts outlined in this complaint, all of which constitute overt acts in furtherance of the conspiracy.

163.    The conspiracy to falsely imprison the plaintiff and prosecute the plaintiff in violation of plaintiff's clearly established constitutional rights.

164.    As a direct and proximate result of the violation of their Fourth and Fourteenth Amendment rights, plaintiff has suffered and will continue to suffer severe and permanent damages.

**WHEREFORE**, plaintiffs demands judgment, pursuant to 42 *U.S.C.* 1985, against defendants jointly and severally for compensatory, pain and suffering, and punitive damages in an amount of ten million dollars ($10,000,000) or to be determined at trial, plus interest, attorney fees pursuant to 42 *U.S.C.* 1988, costs of suit, and such other and further relief the court deems equitable and just.

## SEVENTH COUNT

**CLAIM UNDER THE NEW JERSEY CIVIL RIGHTS ACT, N.J.S.A 10:6-1 TO 10:6-2, FOR VIOLATION OF NEW JERSEY CONSTITUTION, ART. I, SECTION 1**

165.   The Plaintiff repeats and re-alleges every allegation set forth above as if recounted at length herein.

166.   The Plaintiff enjoys the right under Article I, Section 1 of the New Jersey State Constitution to have the unalienable right to enjoy life and liberty.

167.   In violation of this right, the Defendants subjected the Plaintiff to unlawful, excessively forceful, and wrongful arrest.

168.   The Defendants deprived the Plaintiff of this right under the color of State law.

169.   The Defendants acted in reckless disregard for the Plaintiff's rights.

170.   As a result, the Plaintiff suffered serious injury and damage.

**WHEREFORE**, plaintiffs demands judgment, pursuant to *N.J.S.A.* 10:6-1 to 10:6-2, against defendants jointly and severally on the sixth count of this complaint for compensatory, pain and suffering, and punitive damages in an amount of ten million dollars ($10,000,000) or to be determined at trial plus interest, attorney fees, costs of suit, and such other and further relief the court deems equitable and just.

## EIGHTH COUNT

**CLAIM UNDER THE NEW JERSEY CIVIL RIGHTS ACT, N.J.S.A 10:6-1 TO 10:6-2, FOR VIOLATION OF NEW JERSEY CONSTITUTION, ART. I, SECTION 7**

171.   The Plaintiff repeats and re-alleges every allegation set forth above as if recounted at length herein.

172.    The Plaintiff has the right, pursuant to New Jersey Constitution, Article I, Section 7, to be secure in his person against unreasonable seizures.

173.    In violation of these rights, the Defendants caused the Plaintiff to be subject to an unreasonable seizure.

174.    The Defendants acted in reckless disregard for the Plaintiff's rights.

175.    The Plaintiff suffered serious injury.

**WHEREFORE**, plaintiffs demands judgment, pursuant to *N.J.S.A.* 10:6-1 to 10:6-2, against defendants jointly and severally on the seventh count of this complaint for compensatory, pain and suffering, and punitive damages in an amount of ten million dollars ($10,000,000) or to be determined at trial plus interest, attorney fees, costs of suit, and such other and further relief the court deems equitable and just.

## NINTH COUNT

### ASSAULT AND BATTERY AGAINST ALL DEFENDANTS SUED IN THEIR INDIVIDUAL CAPACITY

176.    Plaintiff repeats and re-alleges every allegation set forth above as if recounted at length herein.

177.    The above Defendants placed the Plaintiff in reasonable apprehension of an offensive touching.

178.    The Defendants subjected the Plaintiff to an offensive touching.

179.    The Defendants acted in reckless disregard for the Plaintiff's rights, safety, and well-being.

180.    As a result, the Plaintiff suffered serious injury.

**WHEREFORE**, plaintiff demands judgment against the defendants, jointly and severally for compensatory, pain and suffering, and punitive damages in an amount of ten million dollars ($10,000,000) or to be determined at trial, plus interest, attorney fees, costs of suit, and such other and further relief the court deems equitable and just.

## TENTH COUNT

### COMMON LAW MALICIOUS PROSECUTION AGAINST ALL DEFENDANTS SUED IN THEIR INDIVIDUAL CAPACITY

181.   Plaintiff repeats and re-alleges every allegation set forth above as if recounted at length herein.

182.   Defendants violated plaintiff's rights by initiating the prosecution of plaintiff for Disorderly Conduct (*N.J.S.A.* 2C:33-2B), Trespassing (*N.J.S.A.* 2C:18-3B(1)), Obstructing Administration of Law (*N.J.S.A.* 2C:29-1A), and Resisting Arrest (*N.J.S.A.* 2C:29-2A(1)).

183.   The defendants were responsible for or caused that proceeding to be instituted against him/her, such as by starting the criminal judicial proceeding against the New Jersey malicious prosecution plaintiff by Straub's signing a New Jersey criminal complaint and conspiring to prosecute the complaint.

184.   The criminal prosecution was dismissed favorably for the plaintiff upon a motion to dismiss filed by the plaintiff.

185.   There was no reasonable or probable cause for the criminal prosecution.

186.   The defendants were activated by a malicious motive in prosecuting the criminal complaint against plaintiff.

187.   As a result, the Plaintiff suffered serious injury and deprivation of liberty.

**WHEREFORE**, plaintiff demands judgment against the defendants, jointly and severally for compensatory, pain and suffering, and punitive damages in an amount of ten million dollars ($10,000,000) or to be determined at trial, plus interest, attorney fees, costs of suit, and such other and further relief the court deems equitable and just.

## ELEVENTH COUNT

### GROSS NEGLIGENCE AGAINST THOSE DEFENDANTS SUED IN THEIR INDIVIDUAL CAPACITY

188.    Plaintiff repeats and re-alleges every allegation set forth above as if recounted at length herein.

189.    The Defendants owed the Plaintiff the duty of exercising the minimal degree of reasonable care applicable to persons in their capacity to ensure that they had probable cause to arrest, and used the appropriate degree of force in doing so.

190.    In breach of that duty, the Defendants wrongfully pursued and arrested the Plaintiff; and employed use of excessive force in doing so.

191.    As a result of the Defendants' actions, the Plaintiff suffered serious injury and damage.

**WHEREFORE**, plaintiff demands judgment against the defendants, jointly and severally for compensatory, pain and suffering, and punitive damages in an amount of ten million dollars ($10,000,000) or to be determined at trial, plus interest, attorney fees, costs of suit, and such other and further relief the court deems equitable and just.

## TWELFTH COUNT

### NEGLIGENCE AGAINST THOSE DEFEFNDANTS
### NAMED IN THEIR INDIVIDUAL CAPACITY

192.     Plaintiff repeats and re-alleges every allegation set forth above as if recounted at length herein.

193.     The Defendants owed the Plaintiff the duty of exercising reasonable care in effectuating his arrest.

194.     In violation of that duty, the Defendants negligently arrested the Plaintiff for something he was not guilty of, and employed unreasonable force in doing so.

195.     As a result of the Defendants' breach, the Plaintiff was injured.

**WHEREFORE**, plaintiff demands judgment against the defendants, jointly and severally for compensatory, pain and suffering, and punitive damages in an amount of ten million dollars ($10,000,000) or to be determined at trial, plus interest, attorney fees, costs of suit, and such other and further relief the court deems equitable and just.

## THIRTEENTH COUNT

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST THOSE
### DEFENDANTS NAMED IN THEIR INDIVIDUAL CAPACITY

196.     Plaintiff repeats and re-alleges every allegation set forth above as if recounted at length herein.

197.     The Defendants' conduct specified above was so extreme in degree as to be utterly intolerable in a civilized society.

198.     The Defendants' conduct was certain to cause emotional distress to the Plaintiff.

199.    The emotional distress suffered by the Plaintiff was so extreme that no reasonable person can be expected to endure it.

200.    The Defendants acted with malice or willful disregard for the Plaintiff's rights.

201.    As a result of the Defendants' actions, the Plaintiff suffered serious injury and damage.


**WHEREFORE**, plaintiff demands judgment against the defendants, jointly and severally for compensatory, pain and suffering, and punitive damages in an amount of ten million dollars ($10,000,000) or to be determined at trial, plus interest, attorney fees, costs of suit, and such other and further relief the court deems equitable and just.


### <u>FOURTEENTH COUNT</u>
### **COMMON LAW FALSE IMPRISONMENT AGAINST THOSE DEFENDANTS NAMED IN THEIR INDIVIDUAL CAPACITIES**

202.    Plaintiff repeats and re-alleges every allegation set forth above as if recounted at length herein.

203.    The Defendants acted outside of their authority in arresting the Plaintiff.

204.    The Defendants unlawfully restrained the Plaintiff's locomotion.

205.    The Defendants' arrest of the Plaintiff was not based on probable cause, and ultimately resulted in dismissal of the claims against the Plaintiff.

206.    The Defendants acted in reckless disregard for the Plaintiff's rights.

207.    As a result of the Defendants' actions, the Plaintiff suffered serious injury and damage.

**WHEREFORE**, plaintiff demands judgment against the defendants, jointly and severally for compensatory, pain and suffering, and punitive damages in an amount of ten million dollars ($10,000,000) or to be determined at trial, plus interest, attorney fees, costs of suit, and such other and further relief the court deems equitable and just.

## <u>FIFTEENTH COUNT</u>

### **FAILURE TO INTEVENE (DOE OFFICERS)**

208.    Plaintiff repeats and re-alleges every allegation set forth above as if recounted at length herein.

209.    The unidentified Defendants witnessed, participated in, or observed the Plaintiff being beaten, battered, and wrongfully arrested by the involved Officers/Supervisor and the other Doe Officers.

210.    The Defendants observing this happen knew that the involved Officers and Supervisor were violating the Plaintiff's Constitutional Rights.

211.    The observing Defendants had an opportunity to intervene and prevent the continued violation of the Plaintiff's rights.

212.    The observing Defendants failed to intervene.

213.    As a result, the Plaintiff suffered severe injury.

214.    As a result of the Defendants' actions, the Plaintiff suffered serious injury and damage.

**WHEREFORE**, plaintiff demands judgment against the defendants, jointly and severally for compensatory, pain and suffering, and punitive damages in an amount of ten million dollars ($10,000,000) or to be determined at trial, plus interest, attorney fees, costs of suit, and such other and further relief the court deems equitable and just.

/s/ Kenneth Rosellini

Dated: May 10, 2019

_____ _____
KENNETH ROSELLINI, ESQ. (6047)
Attorney at Law for Plaintiff

## JURY DEMAND AND DESIGNATION OF PLACE OF TRIAL

Plaintiff demands that this matter be tried to a jury of twelve in the United States District Court for the District of New Jersey, Newark Vicinage.

/s/ Kenneth Rosellini

Dated: May 10, 2019

_____ _____
KENNETH ROSELLINI, ESQ. (6047)
Attorney at Law for Plaintiff

## TRIAL COUNSEL DESIGNATION

Kenneth Rosellini, Esq. is hereby designated trial counsel in this matter.