<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| MOHAMED KHALIL, | |
|      Plaintiff, | No. 18cv3241 (EP) (JSA) |
|      v. | **OPINION** |
| CITY OF PATERSON, et al., | |
|      Defendants. | |

**PADIN**, **District Judge.**

Plaintiff Mohamed Khalil alleges state and federal civil rights and common law tort claims against Defendants City of Paterson ("Paterson"), Paterson Police Department Officer Elizabeth Straub and Sergeant Joseph Delgado (the "Officer Defendants"), and John Doe Officers stemming from a March 6, 2016 arrest. Plaintiff alleges that his attempt to obtain a restraining order against an ex was met with bigoted remarks and, ultimately, an unjustified arrest utilizing excessive force. Defendants disagree, arguing that Plaintiff became irate and refused to leave after officers took his report but informed him nothing more could be done at the time.

Discovery having concluded, all three named Defendants independently move for summary judgment dismissing the Amended Complaint. For the reasons below, the Court will **GRANT** Sergeant Delgado's motion, **GRANT IN PART** Officer Straub's motion, and **GRANT IN PART** Paterson's motion.[1] Plaintiff's federal false arrest/wrongful imprisonment and malicious prosecution claims against Officer Straub survive.

---

[1] The Court decides the motions without oral argument pursuant to Local Rule 78.1.

I.      **BACKGROUND**[2]

A.      **Plaintiff files a domestic violence complaint**

On March 6, 2016 at 1:30 a.m., Plaintiff, at the time an employee at the Paterson City Museum, went to the Paterson Police Department ("Paterson PD") to file a domestic violence complaint against his ex-girlfriend for threatening to obtain a firearm and shoot Plaintiff. Paterson Facts ¶¶ 1-3. Though Plaintiff did not take the threat seriously, he sought to file a complaint because his ex had filed a complaint against him for harassment. *Id.* ¶¶ 4-5. A Paterson PD officer told Plaintiff to come back when the next shift began because officers on duty were responding to a shooting that had occurred that evening. *Id.* ¶ 6.

When Plaintiff returned at 4:30 a.m., Officer Maribel Seabrooks[3] assisted Plaintiff at the front desk. *Id.* ¶¶ 9-10. D.E. 85-3 (Paterson Ex. C. "Seabrooks Report") at 146. Plaintiff, with the assistance of Officers Seabrooks and Straub, completed a "Probable Cause" form in support of his domestic violence complaint. Paterson Facts ¶¶ 10-13; D.E. 85-3 (Paterson Ex. D) at 150. Officer Straub informed Plaintiff that his ex could not be "charged for a weapon when she does not own one." Paterson Facts ¶ 14. Officer Seabrooks completed a domestic violence report and criminal complaint against Plaintiff's ex for harassment and informed Plaintiff that an officer at

---

[2] The following are taken from the parties submissions, noting discrepancies (in this case, many) where they exist. This Opinion refers frequently to the following documents:
- Delgado Mot. – Sergeant Delgado's summary judgment brief. D.E. 84-1.
- Delgado Facts. – Sergeant Delgado's Statement of Undisputed Material Facts. D.E. 84-1 at 7, *et seq.*
- Paterson Mot. – Paterson's summary judgment brief. D.E. 85-1.
- Paterson Facts – Paterson's Statement of Undisputed Material Facts. D.E. 85-2.
- Straub Mot. – Officer Straub's amended summary judgment brief. D.E. 85-1.
- Depositions ("Dep.") of Plaintiff (D.E. 85-3 at 42), Officer Straub (*Id.* at 152), and Officer Daunno (*Id.* at 183).

[3] As the Court details below, Plaintiff denies that Officer Seabrooks was the officer who assisted him, arguing that it was Straub instead. But Plaintiff's Facts, like Plaintiff's Amended Complaint, states only that the officer was "believed to be Straub." Seabrooks' name is on the report.

the front desk would assist him in obtaining a restraining order.  *Id.* ¶¶ 15-16.  Most of what happened next is contested.

### B.   The parties dispute what happened after Plaintiff filed the report

#### 1.   *Defendants' version*

At about 7:30 a.m., Plaintiff "became irate" when Officers Seabrooks and Straub told him that no more could be done after they filed the domestic violence report; his ex would not be arrested for a weapons charge.  Paterson Facts ¶¶ 17-18; Straub Dep. 27-28.  Officers Seabrook and Straub both told Plaintiff to leave.  Straub Dep. 26-27.  Sergeant Delgado heard the dispute and walked to the lobby area, where he saw Plaintiff and Officers Seabrook, Straub, Frank Daunno, and Bermudez.  Delgado Facts ¶¶ 8-9; Delgado Report ¶ 2.  Delgado observed Plaintiff acting belligerently and aggressively.  Delgado Facts ¶ 9.

Officer Daunno,[4] who had arrived about an hour earlier, overheard the commotion, came to the front desk, and warned Plaintiff that he was causing a disturbance and had to leave.  Paterson Facts ¶¶ 21-23; Daunno Dep. 31-32.  When Plaintiff refused, Straub and Daunno walked him out.  Paterson Facts ¶¶ 25-26; Straub Dep. 28:14-23.  Daunno "put [his] arm around [Plaintiff] and directed him…to guide him out the door."  Daunno Dep. 34-35.  Daunno gave Plaintiff "a little force to get him out the door."  *Id.* 35:6-11.  Sergeant Delgado escorted them to the exit, but stayed inside.  Delgado Facts ¶ 12; Delgado Dep. 11-13.

#### 2.   *Plaintiff's version*

When Plaintiff called before returning to the police station, Officer Straub told him he had to make the report in person.  Pl. Facts ¶ 3; Pl. Dep. 104:22-105:9.  When Plaintiff arrived at the station at about 4:30 a.m., Officer Straub "greeted him very aggressively" and said, "you Arab

---

[4] Officer Daunno is sometimes referred to in the transcripts as "Diuno."

Muslim, you treat women badly and disrespect women" and "you disrespect women in your own country, not here."  Pl. Facts ¶¶ 4-5; Am. Compl. ¶ 18; Pl. Dep. 111:4-12.  Officer Straub told Plaintiff it would take three hours to finish his report.  Pl. Facts ¶ 8.  Plaintiff passed the time on his cell phone.  *Id.*

At some point, Plaintiff observed a male officer "playing with [Straub's] ear and neck" in an intimate manner.  *Id.* ¶ 9; Pl. Dep. 123:13-19.  Because Plaintiff was holding his phone up, he believes that the male officer assumed that Plaintiff was recording the officers.  Pl. Facts ¶ 9.  Officer Straub approached Plaintiff and accused Plaintiff of lying on his domestic violence complaint form.  *Id.* ¶ 10; Pl. Dep. 121:14-125:5.

Plaintiff asked to speak with a supervisor.  The Supervisor, "believed to be [Sergeant] Delgado," emerged, shouted obscenities, and pushed Plaintiff out the front door.  Pl. Facts ¶ 11.  Plaintiff told them he was leaving.  *Id*; Pl. Dep. 157-58.  During this interaction Plaintiff stated that he was also a city employee, to which the Supervisor again responded with obscenities.  Pl. Facts ¶ 12; Pl. Dep. 158:7-12.

### C.   The parties dispute the circumstances surrounding Plaintiff's arrest

#### 3.   *Defendants' Version*

Officers Straub, Seabrooks, and Daunno followed Plaintiff outside.  Plaintiff continued to linger outside, threatening to call Paterson's Mayor and Director of Police.  Paterson Facts ¶ 27.  Officer Straub warned Plaintiff more than once that he would be arrested if he did not leave.  Paterson Facts ¶ 29; Straub Dep. 31:14-32:25.  When Plaintiff refused, Officer Straub arrested him.  Paterson Facts ¶ 30; Straub Dep. 31-34.  Plaintiff refused to put his hands behind his back and tried to walk away.  *Id.* ¶¶ 31-32; Straub Dep. 34:6-11.

Straub employed a "compliance hold" to subdue Plaintiff, which consisted of forcing Plaintiff "against the wall, and then grabbing his arm and having to forcefully put it into the handcuffs, because he refused to put his hands behind his back."  Straub Dep. 37:11-20.  Plaintiff was arrested for defiant trespass.  *Id.* 34:8-13.  Even after being handcuffed, Plaintiff refused to re-enter the police station.  Paterson Facts ¶ 36; Straub Dep. 37.  Officers Straub and Daunno escorted Plaintiff inside; they had to "hold Plaintiff up against different surfaces…because Plaintiff continued to actively resist his transport to the cell block."  Paterson Facts ¶¶ 37-38; Daunno Dep. 43-44.  Officer Daunno "applied just enough pressure to get and keep Plaintiff against the wall or surface to block his peripheral vision and control Plaintiff."  *Id.*

### 4. *Plaintiff's version*

Plaintiff was near his car outside when an officer yelled, "don't let him leave, he was recording us!"  Pl. Facts ¶ 13; Pl. Dep. 131:21-24.  The officer "ran and hit [Plaintiff's] hand," causing Plaintiff's phone to land on the ground.  *Id.*  The officer broke the phone.  *Id.*  Officer Straub also came outside, cursed at Plaintiff, and arrested him for trespassing.  Pl. Facts ¶ 13; Pl. Dep. 132.  Seven officers, including Sergeant Delgado, came outside and physically assaulted Plaintiff.  Pl. Facts ¶ 15.  Delgado "continually hit and punched" Plaintiff and cursed at him, and made "disparaging and hateful remarks about the Plaintiff's religion and background."  Pl. Facts ¶¶ 16-17; Pl. Dep. 170-73.

### D.   The parties dispute how Plaintiff's charges were processed

### 5. *Defendants' version*

Officer Daunno brought Plaintiff to the cell block, where he searched Plaintiff and removed the handcuffs.  Paterson Facts ¶¶ 41-45.  Plaintiff was processed by cell block personnel and

charged with resisting arrest, disorderly conduct, defiant trespass, and obstruction of the administration of law.  *Id.* ¶¶ 46-47; D.E. 85-3 (Paterson Ex. G, Officer Straub's report) at 230.

### 6. *Plaintiff's version*

Officer Straub "asked the other Officers to pick and choose charges" against Plaintiff.  Pl. Facts ¶ 18.  Officer Straub then "hid the paperwork" so Plaintiff would not be released in time to open the City Museum, where Plaintiff worked, for an event that day.  Pl. Facts ¶ 19; Pl. Dep. 114.

On their way back into the station, Sergeant Delgado "held the Plaintiff's head from the back and banged it on the concrete, walls, glass door, elevator, and pushed the Plaintiff against every wall and metal bar that he could while dragging the Plaintiff from outside the Police Station to the upstairs."  *Id.*; Pl. Dep. 159-160.   At Sergeant Delgado's instruction, Plaintiff was handcuffed to a bench in "lucky cell number 23," a "filthy" enclosure containing vomit and excrement.  Pl. Facts ¶ 20; Pl. Dep. 95.  Plaintiff pleaded for assistance from a different officer who fingerprinted Plaintiff; the officer acknowledged that the others, *i.e.*, Delgado and Straub, were a "gang" that would "hurt" the officer if they knew he helped Plaintiff.  Pl. Facts. ¶¶ 22-23; Pl. Dep. 181-82.

### E.   Plaintiff is released

The parties agree that Plaintiff was ultimately processed and released at 7:45 p.m., about 17 hours after he first entered the police station to file a complaint.  Pl. Facts ¶ 24.  Plaintiff went to the home of then-Mayor Jose ("Joey") Torres, who advised Plaintiff to go to Paterson Police Chief Speziale's office and file a complaint.  Pl. Facts ¶¶ 24-25; Pl. Dep. 186-87.  Plaintiff saw Chief Speziale the next day and filed the complaint with Internal Affairs, who photographed Plaintiff's injuries, showed Plaintiff a video "showing in part the beating," and asked Plaintiff to

identify the officers in the video.[5]  Pl. Facts ¶ 25; Pl. Dep. 188-89, 210-12, 244.  On June 1, 2016,

upon Plaintiff's motion Paterson Municipal Court Judge J. Kevin McDuffie dismissed all charges

against Plaintiff.  Pl. Facts ¶ 28; Paterson Reply Facts ¶ 28.

**F.     This action**

Plaintiff filed this action on March 6, 2018, exactly two years after his arrest.  D.E. 1.

Plaintiff later filed an Amended Complaint.  D.E. 24 ("Am. Compl.").  The Amended Complaint

asserts fifteen counts:

**Federal civil rights claims**

1. 42 U.S.C. § 1983 (excessive force) claim against the Officer Defendants.  ¶¶ 116-124.
2. 42 U.S.C. § 1983 (wrongful arrest) claim against the Officer Defendants.  ¶¶ 125-130.
3. 42 U.S.C. § 1983 (false imprisonment) claim against the Officer Defendants.  ¶¶ 131-34.
4. 42 U.S.C. § 1983 (*Monell* claims) claim against Paterson "and all supervisors" for failing to develop policies and train officers appropriately.  ¶¶ 135-153.
5. 42 U.S.C. § 1983 (malicious prosecution) claim against the Officer Defendants. ¶¶ 154-59.
6. 42 U.S.C. § 1985 (conspiracy) claim against the Officer Defendants.  ¶¶ 160-64.

**State civil rights claims**

7. New Jersey Civil Rights Act (NJCRA) claim against all Defendants for excessive force and wrongful arrest.  ¶¶ 165-70.
8. NJCRA claim against all Defendants for unreasonable seizure.  ¶¶ 171-75.

_____

[5] Paterson acknowledges the video's existence.  Its expert argues, however, that "the footage has deficiencies under [F.R.E.] 902" and, in any event, shows that the officers involved "acted reasonably given the facts and circumstances."  Paterson Reply Facts ¶ 27.  But the video is absent from the record, a glaring omission in light of Plaintiff's explicit reliance upon it.  *See* Pl. Paterson Opp'n. 12-13 (Plaintiff "relies upon the videotape of the event viewed by the Plaintiff during the processing of his Internal Affairs complaint[.]").  The only exhibit Plaintiff attaches is a portion of his Amended Complaint.  D.E. 95 at 21; D.E. 97 at 19.  Plaintiff's Amended Complaint alleges only that Paterson refused to respond to a subpoena for the video.  Plaintiff does not attach the subpoena or elaborate upon any efforts to compel compliance.  Am. Compl. ¶ 74.  This is particularly significant given that Plaintiff was afforded the opportunity to re-open discovery for additional depositions.  D.E. 67; *see Chester v. Cape May Cty.*, No. 17-39, 2019 U.S. Dist. LEXIS 108279, at *17-18 (D.N.J. June 27, 2019) ("Counsel's unsubstantiated assertions of "fact" do not constitute evidence for the purpose of summary judgment.  Nor does the Court have any obligation "to scour the entire record to find a factual dispute.").

**State common law claims**

9. Common law assault and battery against the Officer Defendants. ¶¶ 176-80.
10. Common law malicious prosecution against the Officer Defendants.  ¶¶ 181-87.
11. Common law gross negligence against the Officer Defendants.  ¶¶ 188-91.
12. Common law negligence against the Officer Defendants.  ¶¶ 192-95.
13. Common law intentional infliction of emotional distress (IIED) claims against the Officer Defendants.  ¶¶ 196-201.
14. Common law false imprisonment against the Officer Defendants.  ¶¶ 202-07.
15. Failure to intervene against the Doe Officers.  ¶¶ 208-214.

All counts flow from the same factual core: Plaintiff alleges that he was arrested and prosecuted without probable cause, and that the Officer Defendants used excessive force during the arrest.  Paterson, Sergeant Delgado and Officer Straub move for summary judgment dismissing the Amended Complaint.  D.E.s 84 (Delgado), 85 (Paterson), 89 (Straub).[6]  Plaintiff opposes all three motions.[7]  D.E.s 95-99.  Only Paterson and Straub have replied.  D.E.s 100-01.

## II.    LEGAL STANDARDS

### A.    Summary Judgment

A court may grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable jury could return a verdict for the non-moving party. *Kaucher v. Cty. of Bucks*, 455 F.3d 418, 423 (3d Cir, 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)).  A factual dispute is "material" if it might affect the outcome of the case under governing law. *Id.*  (citing *Anderson*, 477 U.S. at 248).  Under Rule 56, a court must view the

---

[6] Officer Straub's motion relies upon Paterson's Statement of Undisputed Material Facts.  D.E. 89-1 at 5-6.

[7] Plaintiff's opposition to Officer Straub's motion, however, relies upon his opposition to the other Defendants.  As discussed below, that shortcut is ill-advised.

evidence presented in the light most favorable to the non-moving party. *See Anderson*, 477 U.S. at 255. However, "[u]nsupported assertions, conclusory allegations, or mere suspicions are insufficient to overcome a motion for summary judgment." *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 252 (3d Cir. 2010).

The movant bears the initial responsibility to establish the basis for the motion for summary judgment and to identify the portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When the non-moving party bears the burden of proof on an issue, the moving party's initial burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

After the moving party has met its initial burden, the non-moving party must set forth specific facts showing that there is a genuinely disputed factual issue for trial by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations…, admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c). Unsworn allegations in memoranda and pleadings or allegations questioning the credibility of witnesses are insufficient to defeat a properly supported summary judgment motion. *Schoch v. First Fidelity Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990). Summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

**B.      Section 1983 Claims and NJCRA claims**

Section 1983 permits claims for violations of certain constitutional rights:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983.

To state a claim for relief under § 1983, a plaintiff must allege: (1) the violation of a right secured by the Constitution or laws of the United States; and (2) that the alleged deprivation was committed or caused by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). NJCRA claims are analogous to their § 1983 federal counterparts, and are therefore analyzed using the legal framework applicable to the analogous § 1983 claim absent clear state law indicating otherwise. *See, e.g., Trafton v. City of Woodbury*, 799 F. Supp. 2d 417, 443-44 (D.N.J. 2011).

## III.   ANALYSIS

### A.   Plaintiffs' claims are not untimely

Paterson argues that Counts One through Five (§ 1983 claims) and Seven through Eight (NJCRA claims) are barred by the statute of limitations. Paterson Mot. 5-6. Paterson is correct that § 1983 and NJCRA claims must be filed within two years of accrual, that those claims began to accrue March 6, 2016, and that "the statute of limitations expires on the anniversary date of the event, not the day following." Paterson Mot. 6 (quoting *Monkelis v. Mobay Chem.*, 827 F.2d 937, 938 (3d Cir. 1987)). But Paterson misapprehends a crucial point: because the statute of limitations expires on an event's anniversary date, a complaint filed *on* the anniversary is timely. Thus, because Plaintiff's arrest, detention, and accrual of criminal charges all occurred on March 6, 2016, the March 6, 2018 complaint is timely. *See Kiriakidis v. Borough of Vintondale*, 609 F. App'x

713, 717 (3d Cir. 2015) (assault claim that accrued on August 2**8**, 2010 was one day late because it was filed on August 2**9**, 2012).  Accordingly, this branch of Paterson's motion will be denied.

> ### B.      Nothing in the record supports Delgado's involvement

Sergeant Delgado argues that all claims against him must be dismissed because the record refutes any alleged involvement in any alleged civil rights violations.  The Court agrees.

A defendant's personal involvement is a prerequisite to liability in § 1983 cases.  *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 291-92 (3d Cir. 2018) (citing consensus of other circuits); *Burley v. Gagacki*, 729 F.3d 610, 619 (6th Cir. 2013) ("To establish liability against an individual defendant acting under color of state law, a plaintiff must show that the defendant was 'personally involved' in the use of excessive force.").  Logically, it follows that a plaintiff's misidentification justifies dismissal against the misidentified defendant.  *Chapolini v. Capodanno*, No. 18-2629, 2021 U.S. Dist. LEXIS 178274, at *32 (E.D. Pa. Sep. 20, 2021) (granting summary judgment dismissing excessive force claims related to strip-search where plaintiff acknowledged that defendant was not the officer who conducted the strip-search); *see also Mrlack v. Cal. Univ. of Pa.*, Civil Action No. 17-1211, 2019 U.S. Dist. LEXIS 69307, at *24 (W.D. Pa. Apr. 24, 2019) (granting summary judgment to defendant officers where plaintiff failed to raise an issue of material fact as to whether either officer was in the office area near the holding cell where plaintiff allegedly begged for medical assistance).

Here, Plaintiff's Statement of Facts, like the Amended Complaint, asserts that Sergeant Delgado was the Officer/Supervisor "believed to be" one of the officers who came outside to aid Straub, assaulted Plaintiff, and then dragged him inside.  *See, e.g.* Pl. Facts ¶¶ 15, *et seq.*  But Plaintiff misrepresents the record.  For example, Plaintiff cites his own testimony to assert that "the Supervisor, believed to be Delgado" came out of the police station, assaulted Plaintiff with

other officers, and continued assaulting him while escorting him back inside the station.  Pl. Facts ¶ 15 (citing Pl. Dep. 159:9-160:12; 167:20-168:6).  And indeed, that testimony identified a single, "heavy-set, white male," "Italian officer as the assailant for that sequence of events."  *Id.*; Pl Dep. 245.

However, Plaintiff never explicitly identified Sergeant Delgado as an assailant in his testimony, and the record indicates why: the assailant was likely Officer Daunno (who Plaintiff did not sue), not Sergeant Delgado (who he did).  In response to an internal affairs inquiry, Sergeant Delgado submitted a report indicating that Officers Seabrooks, Straub, Bermudez, and Daunno escorted Plaintiff outside, and that Straub and Daunno handcuffed Plaintiff.  D.E. 84-5 at 2. Officers Straub and Daunno's joint report likewise identified Officer Daunno as the officer who assisted Straub in handcuffing Plaintiff.  D.E. 85-3 at 231.  Officer Daunno himself confirmed that he assisted Officer Straub, and then escorted Plaintiff back inside after he had been handcuffed. Daunno Dep. 29-48.

Confronted with this inconsistency at his deposition, and asked repeatedly to confirm the officer's identity, Plaintiff vacillated between confirming that Officer Daunno was indeed the individual who escorted him out, and stating that he didn't remember who it was.  Pl. Dep. 166-72.  This is not sufficient to preserve a genuine issue of material fact as to whether Sergeant Delgado was personally involved in the alleged violations of Plaintiff's civil rights.

To the extent that Plaintiff seeks to impute liability to Sergeant Delgado based on his presence nearby or in his role as supervisor, neither supervisors nor an individual defendant's "cohorts who happen to be in the immediate vicinity" may be vicariously liable under Section 1983.  *Jutrowski*, 904 F.3d at 290 (noting that the Third Circuit has "imported these precepts [of

vicarious liability] into the excessive force context"). Accordingly, all claims against Sergeant Delgado will be dismissed.

### C.     The record lacks support for an excessive force claim against Straub

Officer Straub also moves for summary judgment dismissing Plaintiff's excessive force claims against her. Straub Mot. 7. Specifically, Straub argues that Plaintiff's deposition testimony identifies the "heavy-set guy"—Officer Daunno, as discussed above—as the only assailant. *Id.* (citing Pl. Dep 168). Plaintiff does not oppose this argument.[8]

Officer Straub is correct that nothing in Plaintiff's statement of facts, let alone the record, suggests an excessive force claim against her. At most, there is an allegation that Sergeant Delgado "and six other Officers came outside and were hitting and punching the Plaintiff." Pl. Facts ¶ 15. That level of generality cannot preserve the claim. Summary judgment is warranted where the plaintiff is unable to identify the accused officers. *Seward v. City of Phila.*, No. 00-3563, 2002 U.S. Dist. LEXIS 6619, at *6 (E.D. Pa. Apr. 11, 2002) (citing *Sharrar v. Felsing*, 128 F.3d 810, 821 (3d Cir. 1997) (no evidentiary basis on which to hold defendants liable for excessive force if plaintiff is able only to recognize the defendant officers, but is unable to actually identify those officers who allegedly abused plaintiff)); *see also Chapolini*, 2021 U.S. Dist. LEXIS 178274, at *19-20 (differentiating cases where, despite the plaintiff's inability to identify the particular officer who applied allegedly unconstitutional force, "the evidence identifies the officer who 'bore primary responsibility for taking [the plaintiff] into custody' and could have used excessive force

---

[8] Because Officer Straub's motion relies upon Sergeant Delgado and Paterson's facts, Plaintiff's opposition to Straub likewise relies upon his opposition to Delgado and Paterson's motions. D.E. 99. But unlike Straub's supporting facts, her *arguments*, and her application of the facts, differ from Delgado and Paterson's.

in doing so."). Accordingly, all excessive force claims (Counts One and Seven) and the common law assault and battery claim (Count 9) against Officer Straub will be dismissed.

### D.   Plaintiff's IIED claim is unsupported

Sergeant Delgado moves for summary judgment dismissing Plaintiff's state IIED claim. Delgado Mot. 15. Plaintiff does not oppose. Accordingly, Plaintiff's IIED claim (Count Thirteen) is dismissed.[9]

### E.   Malicious prosecution and false arrest claims

The Court addresses Plaintiff's malicious prosecution and false arrest[10] claims together because they turn on essentially the same facts and analysis, and dispute the same issue: whether Plaintiff's conduct outside the police station created probable cause to arrest and prosecute him.

"The proper inquiry in a section 1983 claim based on false arrest …is not whether the person arrested in fact committed the offense but whether the arresting officers had probable cause to believe the person arrested had committed the offense." *Groman v. Township of Manalapan*, 47 F.3d 628, 634 (3d Cir. 1995) (quoting *Dowling v. City of Philadelphia*, 855 F.2d 136, 141 (3d Cir. 1988)). "[W]here the police lack probable cause to make an arrest, the arrestee has a claim

---

[9] The Court's independent review of the record would merit dismissal of this claim regardless. A common law IIED claim requires a plaintiff to prove that: (1) the defendant acted intentionally or recklessly both in doing the act and producing emotional distress; (2) the conduct was so outrageous in character and extreme in degree as to go beyond all bounds of decency; (3) the defendant's actions were the proximate cause of the emotional distress; and (4) the distress suffered was so severe that no reasonable person could be expected to endure it. *Lascurain v. City of Newark*, 349 N.J. Super. 251, 277 (App. Div. 2002) (citing *Buckley v. Trenton Sav. Fund Soc'y*, 111 N.J. 355, 366 (1988)). Plaintiff does not allege, let alone demonstrate, satisfaction of every element.

[10] False arrest and unlawful imprisonment are functionally the same tort. *Dull v. W. Manchester Twp. Police Dep't*, 604 F. Supp. 2d 739, 750 (M.D. Pa. 2009) (Fourth Amendment unlawful arrest and unlawful imprisonment claims require the plaintiff to show that he or she was arrested without probable cause).

under § 1983 for false imprisonment based on a detention pursuant to that arrest." *Id.* at 636 (citing *Thomas v. Kippermann*, 846 F.2d 1009, 1011 (5th Cir. 1988)).

To state a claim for malicious prosecution, a plaintiff must establish that: (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. *Kossler v. Crisanti*, 564 F.3d 181, 186 (3d Cir. 2009).

### 1. *Qualified immunity is inappropriate at this time because the parties dispute what occurred outside*

Notably, Officer Straub does not explicitly move for summary judgment dismissing Plaintiff's malicious prosecution and false arrest claims, *i.e.* Straub does not dispute at least some involvement in the arrest and decision to charge Plaintiff.  Instead, Officer Straub argues that qualified immunity justifies dismissal of those claims, *i.e.,* that Officer Straub did not act unreasonably as a matter of law.  For the reasons below, issues of fact preclude such a finding at this juncture.

Qualified immunity shields officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  The doctrine "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Qualified immunity analysis asks two questions, to be conducted "in the order…most appropriate for the particular case[.]" *Santini v. Fuentes*, 795 F.3d 410, 418 (3d Cir. 2015) (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).  The first is whether the plaintiff sufficiently

alleged the violation of a constitutional right; whether, in other words, there is any wrong to address. *Curley v. Klem,* 499 F.3d 199, 207 (3d Cir. 2007).

And the second qualified immunity question is whether the "right was clearly established at the time of the official's conduct." *L.R. v. Sch. Dist. of Phila.*, 836 F.3d 235, 241 (3d Cir. 2016) (cleaned up). To be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640 (1987). If "the officer made a reasonable mistake about the legal constraints on his actions," then qualified immunity should protect him from suit. *Curley*, 499 F.3d at 207.

Defendants bear the burden of proof for a qualified immunity affirmative defense. *See Goldenbaum v. DeLorenzo*, No. 08-1127, 2010 WL 5139991, at *11 (D.N.J. Dec. 10, 2010). In deciding qualified immunity questions at the summary judgment phase, a court must view the material facts in the light most favorable to the plaintiff. *Id.*; *see also Scott v. Harris*, 550 U.S. 372, 378 (2007). An officer's actions must be judged from the perspective of an objectively reasonable law enforcement officer under the circumstances, aiming to avoid hindsight. *Graham,* 490 U.S. at 396. "[W]hether an officer made a reasonable mistake of law and is thus entitled to qualified immunity is a question of law that is properly answered by the court, not a jury." *Curley v. Klem*, 499 F.3d 199, 211 (3d Cir. 2007).

Importantly, denial of summary judgment is appropriate where the disputed facts are material to the qualified immunity analysis. *Giles v. Kearney,* 571 F.3d 318, 327-28 n.4 (3d Cir. 2009); While the determination of whether an officer is entitled to qualified immunity is a question of law for the court to decide, any disputed factual issues relevant to the qualified immunity determination are for the jury to resolve. *Curley v. Klem*, 499 F.3d 199, 210, 211 n.12 (3d Cir.

16

2007) (*Curley II*); *see also Suarez v. City of Bayonne*, 566 F. App'x 181 (3d Cir. 2014) (reversing district court's grant of summary judgment on excessive force claim where district court credited officer's testimony over plaintiff's, holding that juries should make such determinations instead); *Johnson v. De Prospo*, Civ. No. 08-1813, 2010 U.S. Dist. LEXIS 137938, 2010 WL 5466255 (D.N.J. Dec. 30, 2010) (holding that factual disputes surrounding the arrest, including whether plaintiff resisted arrest or was even conscious during the incident, precluded a qualified immunity determination as a matter of law).

Here, there is a material dispute about what occurred after Plaintiff made his initial report. Plaintiff testified that he was not resisting arrest or disregarding officers' instructions. Rather, he claims that he sat peacefully at the station for several hours, left after making his report, and was already near his car when an unidentified officer directed others to stop him based on the false belief that Plaintiff had been recording them, then assaulted him together before handcuffing him and forcing him back inside into a holding cell. Pl. Facts ¶ 11, *et seq.* In stark contrast, numerous officers testified that Plaintiff was belligerent inside the station, had to be forced outside, and still refused to leave once outside to the point that he had to be arrested. No objective evidence— including the photos or video mentioned in passing—are present in this record to conclusively refute either version, meaning that the dispute is more appropriately considered by a jury. And to the extent that both the malicious prosecution and false arrest claims turn on this dispute, *i.e.* whether there was probable cause to arrest and prosecute Plaintiff for failing to comply with police instructions, a finding of qualified immunity is premature at this time. Accordingly, the Court will deny the branch of Officer Straub's motion seeking summary judgment on Plaintiff's § 1983 claims alleging wrongful arrest, false imprisonment, and malicious prosecution (Counts Two, Three, and Five).

F.      **Plaintiff's** *Monell* **claims**

Plaintiff's Count Four seeks to hold Paterson liable for its officers' conduct.  Municipalities cannot be held liable under a *respondeat superior* theory; rather, municipal liability can be imposed under § 1983 only when "government's policy or custom […] inflicts the injury."  *Monell v. Department of Social Servs. of City of New York*, 436 U.S. 658, 692 (1978).  To prevail on a *Monell* claim, a plaintiff must first establish that a constitutional violation occurred.  *See Adams v. City of Atl. City*, 294 F. Supp. 3d 283, 300 (D.N.J. 2018).  Plaintiff alleges excessive force, unlawful arrest, unjust imprisonment, and malicious prosecution claims.  For the reasons above, the only surviving claims to this point are the unlawful arrest, unjust imprisonment, and malicious prosecution claims against Officer Straub.

Arguing that there is no constitutional violation, Paterson's arguments essentially mirror Straub's: there was probable cause to arrest, detain, and prosecute Plaintiff for defiant trespass and disorderly conduct because "Officers Straub and Daunno gave multiple warnings to leave the police station" and, once Plaintiff left, he "lingered and remained directly outside the entrance," again refusing to leave despite multiple warnings.  Paterson Mot. 8 (citing Paterson Facts ¶¶ 19, 21-22, 26, 28).

Plaintiff highlights paragraphs 77 through 115 of the Amended Complaint, which uses the public record to "detail[] the well-established custom in the Paterson Police Department permitting the unlawful and excessive use of force by its officers."  Pl. Paterson Opp'n 7.  This record includes New Jersey Start Ledger data on the use of force.  *Id.*  Plaintiff adds several recent instances of excessive force.  *Id.* 8-9.

*Monell* claims, like those Plaintiff asserts here, can survive summary judgment when the Court has (1) statistical evidence of inadequate internal affairs investigations *and* (2) a history of

18

complaints against the defendant officer. *Estate of Del Rosario v. Paterson Police Dep't*, No. 14-cv-5167, 2020 U.S. Dist. LEXIS 11278, at *20 (D.N.J. Jan. 23, 2020); *see also Colon v. City of Paterson*, No. 12-cv-1653, 2014 U.S. Dist. LEXIS 126143, 2014 WL 4441503, at *7 (D.N.J. Sept. 9, 2014). When individualized evidence is unavailable, courts have deemed-sufficient "a sample of forty excessive force complaints . . . bearing similarities to [the present] case and arguably evincing a tendency on the part of the [IA] division to insulate officers from liability." *Katzenmoyer v. Camden Police Dep't*, 08-cv-1995, 2012 U.S. Dist. LEXIS 180705, 2012 WL 6691746, at *5 (D.N.J. Dec. 21, 2012) (discussing *Merman v. City of Camden*, 824 F.Supp. 2d 581, 593-94 (D.N.J.2010)). Courts also accept an increasing number of complaints over a short period. *Williams v. Ponik*, 15-cv-1050, 2019 U.S. Dist. LEXIS 5466, 2019 WL 168827, at *11 (D.N.J. Jan. 11, 2019).

There are numerous issues with Plaintiff's *Monell* claims. First, Plaintiff's failure-to-train claims appear limited primarily to excessive force claims, which were dismissed against the individual Officer Defendants for the reasons above. Am. Compl. ¶¶ 77-115; *see Lankford v. City of Clifton Police Dep't*, 546 F. Supp. 3d 296, 328-29 (D.N.J. 2021) (rejecting data as "too general" to support of a claim where "the data compile instances of use of force, but do not state whether those uses of force were justified or excessive" and provide no information as to factually comparable cases).

Moreover, even if the excessive force claims had survived, Plaintiff has identified an appalling record of Paterson Police Officers' use of excessive force, but has not identified any history of claims against Officer Straub or Sergeant Delgado. *Estate of Del Rosario*, 2020 U.S. Dist. LEXIS 11278, at *20-22 (D.N.J. Jan. 23, 2020) (rejecting statistical evidence where plaintiffs' expert failed to explain how the sample cases were selected and how the conduct at issue

was similar).  Accordingly, summary judgment dismissing Plaintiff's *Monell* claims (Count Four) is appropriate.

### G.     There is no evidence supporting Plaintiff's conspiracy claim

Officer Straub also moves for summary judgment dismissing Plaintiff's conspiracy claim (Count Six).  Straub Mot. 11.  Plaintiff has not opposed.[11]

To prevail on a § 1983 conspiracy claim, a plaintiff must prove that persons acting under color of state law "reached an understanding" to deprive him of his constitutional rights.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150-52, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970).  After a plaintiff establishes that the conspiracy's purpose was the deprivation of a federally protected right, "the rule is clear that" the plaintiff "must provide some factual basis to support the existence of the elements of a conspiracy: agreement and concerted action."  *Capogrosso v. Supreme Court of N.J.*, 588 F.3d 180, 184-85 (3d Cir. 2009) (citing *Crabtree v. Muchmore*, 904 F.2d 1475, 1481 (10th Cir. 1990)).  A plaintiff must demonstrate that "the state actors named as defendants in the[] complaint somehow reached an understanding to deny [the plaintiff] his rights," *Kost v. Kozakiewicz*, 1 F.3d 176, 185 (3d Cir. 1993), and in the absence of direct proof, that "meeting of the minds" or "understanding or agreement to conspire" can be "infer[red]" from circumstantial evidence, *Startzell v. City of Philadelphia*, 533 F.3d 183, 205 (3d Cir. 2008).

Here, Plaintiff has barely alleged, let alone proven, any conspiracy.  Even if the Court credited the Amended Complaint's conspiracy allegations, those allegations allege a conspiracy beginning the day of Plaintiff's arrest and between unspecified actors.  Am. Compl. ¶¶ 160-64.

---

[11] As with other claims unique to Straub, Plaintiffs' reliance upon his opposition to the other Defendants' motion proves ill-advised where Plaintiff did not oppose a conspiracy argument that the other Defendants did not make.

Nothing in the record supports those claims. Accordingly, the conspiracy claim (Count Six) will be dismissed.

### H.   Plaintiffs' state claims do not meet the New Jersey Tort Claims Act's monetary threshold

Finally, Officer Straub also moves for summary judgment dismissing Plaintiff's state claims (Counts Seven through Fifteen), arguing that they do not meet the serious injury threshold. Straub Mot. 10. Plaintiff does not oppose. Indeed, the NJCTA only authorizes pain and suffering compensation when the victim suffers "permanent loss of bodily function" resulting in medical bills over $3,600. N.J. Stat. Ann. 59:9-2(d). The requirements include a showing of (i) objective medical evidence of a permanent injury and (ii) a substantial loss. *Gerber v. Springfield Board of Education*, 328 N.J. Super. 24, 35 (App. Div. 2000); *see also Brooks v. Odom*, 150 *N.J.* 395, 403 (1997) (to satisfy the "permanent loss of a bodily function" requirement under the NJCTA a plaintiff must present (1) objective medical evidence of her permanent injuries; and (2) evidence that injuries are substantial. *Id.* at 35.

As Straub argues, Plaintiff has not offered any medical records, bills, or expert opinions. Straub Mot. 10.[12] Accordingly, in the absence of any substantive opposition or record evidence to the contrary, dismissal of Plaintiffs' state claims (Counts Seven through Fifteen) is appropriate. *Byrnes v. City of Brigantine*, Civil Action No. 05-5960, 2007 U.S. Dist. LEXIS 92181, at *34 (D.N.J. Dec. 12, 2007) (dismissing state pain and suffering claims where plaintiff conceded that they could not meet the threshold and medical reports indicated no loss of bodily function); *Srebnik v. State*, 245 N.J. Super. 344, 351 (App. Div. 1991) (affirming dismissal of emotional distress claim).

---

[12] Plaintiff's expert apparently withdrew for non-payment. D.E. 84-9 at 2.

IV.     **CONCLUSION**

For the reasons above, Defendant Sergeant Delgado's motion for summary judgment is **GRANTED**, Defendant Paterson's motion is **DENIED IN PART** on statute of limitations grounds but **GRANTED** to the extent that the claims against it are dismissed on other grounds, and Defendant Officer Straub's motion is **GRANTED IN PART** and **DENIED IN PART** to the extent that only the federal malicious prosecution and false arrest claims against her survive. The result:

- Counts One, Four, Six, and Seven through Fifteen are dismissed in their entirety;

- Counts Two, Three, and Five are dismissed against Sergeant Delgado;

- Counts Two, Three, and Five survive as against Officer Straub.

All dismissals are with prejudice.  An appropriate order accompanies this Opinion.

Dated: March  8, 2023

Evelyn Padin, U.S.D.J.